**STATE of Missouri, Respondent,**

v.

**Troy E. MARLOWE, Appellant.**

**No. SC 84282.**

Supreme Court of Missouri,
En Banc.

Nov. 26, 2002.

---

466

John M. Albright, Daniel T. Moore, Poplar Bluff, Terry C. Allen, Jefferson City, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Linda Lemke, Karen L. Kramer, Assistant Attorney's General, for Respondent.

DUANE BENTON, Judge.

Troy Marlowe appeals his felony convictions for resisting arrest and unlawful use of a weapon. He alleges an improper strike of a venireperson in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). After opinion by the Court of Appeals, this Court granted transfer. *Mo. Const., art. V, sec. 10.* Reversed and remanded in part.

Voir dire concluded on November 1, 2000, with:

*[Defense Counsel]*: Judge, the State struck as one of their peremptory challenges the only African American on the jury panel, Mrs. Fulton, and the defendant would like to allege a Batson challenge to that and wants to know what the—and we want to know what the race neutral reason for striking Ms. Fulton was.

*Court:* Before we do that, I would note that I think you are correct. Ms. Fulton is the only African American venire person this morning, but from what I can

tell, if I'm not mistaken, the defendant is not African American.

[*Defense Counsel*]: That's true, Judge.

*Court:* The defendant is Caucasian. I don't claim to be an expert in this area, but is Batson applicable under those circumstances?

[*Defense Counsel*]: I believe it is, Judge.

[*Prosecutor*]: I think it probably is, Your Honor, because he'd be entitled to have a jury of a cross section, even if he isn't.

*Court:* Perhaps you can amplify this.

[*Prosecutor*]: I did have a race neutral reason, though, Your Honor. I circled it on her jury questionnaire that it says, "Are you a member to—party to a lawsuit?" And she said, "Yes, may soon be a class action," and I looked at her as a government employee who's going to soon be a part of a class action, and I didn't want to ask her specific questions about it, but I just had the impression she might not be a good [juror] for the State.

. . . .

*Court:* [Defense Counsel]?

[*Defense Counsel*]: Judge, I don't believe that's a race neutral reason. There are other people who also indicated that they were members—I don't know what the class action is, but she's not the only one who indicated on her juror questionnaire that she was a potential member of some type of class action suit.

[*Prosecutor*]: Let me check.

[*Defense Counsel*]: Besides, there was no inquiry to her to show what effect, if any, that may have on her.

*Court:* These things are always delicate. I would have this take on it, gentlemen. I'm not certain that's entirely a race neutral explanation, with all due candor,

[Prosecutor]. However, as I said, I may be wrong about this. I don't know if it rises to the level of saying that she has to be left on here when we have a Caucasian defendant. In other words, I'm not offended by [Prosecutor's] strike in this particular instance.

[*Defense Counsel*]: I understand, Judge. It's just, it's my understanding of the law that the race of the defendant is not relevant to a Batson challenge.

*Court:* You may be correct. As I said, I haven't looked at it lately, and you may be correct. I know that Batson has been extended through a case, whose name escapes me at the moment, through gender. So there apparently is some feeling in that direction that there has to be an explanation. But [Prosecutor] hasn't indicated to me that he's either struck her for a racial reason, nor am I compelled to think that he needs to leave her for a racial reason. But [Prosecutor], what's your position on your strike there?

[*Prosecutor*]: Again, Your Honor, that it wasn't for her race. It was for the class action situation. There is another—[Defense Counsel] is correct. I found one other person that had circled class action, but those are the only two people. No, wait. Here's a third, Sheehan. All right. Three people in a class action. Mr. Sheehan was so strong on his other answers, I definitely, definitely, definitely like Sheehan. I'm not concerned about that with him. Ms. Fulton didn't say anything otherwise.

*Court:* She gave normal responses. I'll leave it to you, [Prosecutor]. Do you want to keep that strike or not?

[*Prosecutor*]: I would, Your Honor. I do feel that I've made an adequate record that it's not for racial reasons, and I would hope that I would keep that strike.

*Court:* Anything else, gentlemen? I'm not going to take this away from [Prosecutor]. Like I said, I will leave it up to him. It's his case, and if he wants to stand by it, he may do so.

The African–American venireperson was stricken; the other two identified venirepersons served as jurors. At the end of the first day of trial, the jury questionnaires of all three were admitted into evidence.

■ Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race. *United States v. Martinez–Salazar,* 528 U.S. 304, 315, 120 S.Ct. 774, 781, 145 L.Ed.2d 792, 802 (2000), citing *Batson v. Kentucky* (race). Ten years ago, this Court established the procedure for *Batson* challenges.

> First, the defendant must raise a *Batson* challenge with regard to one or more specific venirepersons struck by the state and identify the cognizable racial group to which the venireperson or persons belong. The trial court will then require the state to come forward with reasonably specific and clear race-neutral explanations for the strike. Assuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will then need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated.

*State v. Parker,* 836 S.W.2d 930, 939 (Mo. banc), *cert. denied,* 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992).

■ There are thus three stages to resolve a *Batson* challenge.

**Stage 1. Opponent raises *Batson* challenge**

■ A *Batson* challenge must be made before the venire is excused and the jury is sworn. *Id.* at 935. In this case, the defendant timely raises a *Batson* challenge, after the State strikes the only African–American venireperson. The white defendant may object to the prosecutor's peremptory challenge of the black venireperson. *Powers v. Ohio,* 499 U.S. 400, 415, 111 S.Ct. 1364, 1373, 113 L.Ed.2d 411, 428 (1991). Once the opponent alleges that a peremptory challenge is discriminatory, the judge proceeds to the second stage— requiring the proponent to give a race-neutral explanation.

**Stage 2. Proponent provides an explanation**

Here, the prosecutor provides an explanation for the strike: that the stricken venireperson was "a government employee who's going to soon be a part of a class action, and . . . might not be a good juror for the State."

Defendant objects that the judge did not rule that the explanation was race-neutral. To the contrary, the colloquy between the judge and counsel amounts to a ruling that the prosecutor's explanation was race-neutral. See *Estate of Graham,* 59 S.W.3d 15, 21 (Mo.App. W.D.2001).

■ The judge first doubts whether the explanation is "entirely . . . race neutral." Next, the judge says he's "not offended by the strike." Eventually, the judge rules that the prosecutor "hasn't indicated to me that he's either struck her for a racial reason, nor am I compelled to think that he needs to leave her for a racial reason." This ruling is sufficient because the initial explanation is deemed race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation, even if that explanation has a disparate impact on minority venirepersons. *Parker,* 836 S.W.2d at 934, *citing Hernandez v. New York,* 500

U.S. 352, 360–62, 111 S.Ct. 1859, 1866–67, 114 L.Ed.2d 395, 406–07 (1991).

■ At the second stage of a *Batson* inquiry, the race-neutral explanation for the strike need not be persuasive. *Purkett v. Elem*, 514 U.S. 765, 768, 115 S.Ct. 1769, 1771, 131 L.Ed.2d 834, 839 (1995). "It is not until the *third* step that the persuasiveness of the justification becomes relevant—the step in which the trial court determines whether the opponent of the strike has carried his burden of proving purposeful discrimination." *Id.* (emphasis in original.) In this case, there was a sufficient ruling to resolve the second stage of *Parker*, and shift the burden to the defendant.

**Stage 3. Opponent proves pretext**

■ During the third stage, the opponent must show that the proffered reasons are merely pretextual. At issue is the plausibility of the explanation for striking the venireperson. *Id.* "At that stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." *Purkett*, 514 U.S. at 768, 115 S.Ct. at 1771, 131 L.Ed.2d at 839. In this case, the prosecutor immediately abandons any explanation based on government employment. The prosecutor elects to rely solely on class-action involvement, by saying: "Again, Your Honor, that it wasn't for her race. It was for the class action situation."

Defense counsel responds that class-action involvement is not race-neutral, as concerns this venire, because other venirepersons were involved in a class action. The prosecutor identifies two white venirepersons whose jury questionnaires show they were "in" class actions. The prosecutor clearly distinguishes one of the two (Sheehan) as giving very "strong" answers. The prosecutor never distinguishes the other white class-action member (Conklin), from the stricken black class-action member.

■ In determining pretext, the first factor to be considered is "the existence of similarly situated white jurors who were not struck." *Parker*, 836 S.W.2d at 940. Although not dispositive, this factor is so relevant in determining pretext that it is "crucial." *See cases cited in the Appendix to this opinion.* In this case, the stricken venireperson is "really" similarly situated to the white juror/venireperson (Conklin). See *State v. Brown*, 998 S.W.2d 531, 542 (Mo. banc), *cert. denied*, 528 U.S. 979, 120 S.Ct. 431, 145 L.Ed.2d 337 (1999); *State v. Cole*, 71 S.W.3d 163 (Mo. banc), *cert. denied*, —— U.S. ——, 123 S.Ct. 261, 154 L.Ed.2d 108 (2002).

■ The State, on appeal, notes that voir dire disclosed that Conklin had a criminal-justice degree but did not work in law enforcement, had served on a criminal jury that ended in mistrial, and had a brother who was assaulted. These are not the prosecutor's justifications. Post-hoc justifications are irrelevant. *Parker*, 836 S.W.2d at 934, 938. The focus of the third stage is the plausibility of the *contemporaneous* explanation. *Id.* at 938.

■ A second factor is the "degree of logical relevance between the proffered explanation and the case to be tried." *Id.* at 940. In this case, class-action involvement is only marginally relevant to deciding assault and weapon charges in a criminal case. A third factor is the prosecutor's credibility, based on "the prosecutor's demeanor or statements during voir dire," and the "court's past experiences with the prosecutor." *Id.* at 940. Here, by the familiarity expressed in the record, the judge found the prosecutor credible based on demeanor, statements, and past experience.

The fourth factor in *Parker* is "the demeanor of the excluded venirepersons." *Id.* at 940. In this case, the judge found that the black venireperson had an appropriate demeanor, by noting that she gave "normal responses."

In sum, in determining pretext, the judge should consider the totality of the facts and circumstances surrounding the case:

> While prosecutors are free to use "horse sense" and "play hunches" in exercising peremptory challenges so long as the factors they rely on are race-neutral, objective justifications for exercising peremptory strikes against minority venirepersons are the most persuasive.

*Parker* 836 S.W.2d at 939 n. 8, citing *State v. Kempker*, 824 S.W.2d 909, 911 (Mo. banc 1992).

The standard of review is for clear error. *Parker*, 836 S.W.2d at 939 n. 7. The prosecutor never distinguishes the white juror/venireperson from the stricken black venireperson. This failure—coupled with the low degree of logical relevance, in a criminal case, of class-action involvement—left the evidence of pretext unrefuted.

The convictions for resisting arrest and unlawful use of a weapon are reversed, and the case remanded for a new trial on those charges. The judgment is otherwise affirmed.

LIMBAUGH, C.J., WHITE, WOLFF, LAURA DENVIR STITH and PRICE, JJ., and ULRICH, Sp.J., concur.

TEITELMAN, J., not participating.

### APPENDIX

*State v. Taylor*, 18 S.W.3d 366, 371, (Mo. banc), *cert denied*, 531 U.S. 901, 121 S.Ct. 238, 148 L.Ed.2d 170 (2000)

*State v. Roberts*, 948 S.W.2d 577, 602 (Mo. banc 1997), *cert denied*, 522 U.S. 1056, 118 S.Ct. 711, 139 L.Ed.2d 652 (1998)

*State v. Smulls*, 935 S.W.2d 9, 16 (Mo. banc 1996), *cert denied*, 520 U.S. 1254, 117 S.Ct. 2415, 138 L.Ed.2d 180 (1997)

*State v. Weaver*, 912 S.W.2d 499, 509 (Mo. banc 1995), *cert denied*, 519 U.S. 856, 117 S.Ct. 153, 136 L.Ed.2d 98 (1996)

*State v. Morrow*, 968 S.W.2d 100, 114 (Mo. banc), *cert. denied*, 525 U.S. 896, 119 S.Ct. 222, 142 L.Ed.2d 182 (1998)

*State v. Nicklasson*, 967 S.W.2d 596, 613 (Mo. banc), *cert. denied*, 525 U.S. 1021, 119 S.Ct. 549, 142 L.Ed.2d 457 (1998)

*State v. Smith*, 944 S.W.2d 901, 913 (Mo. banc), *cert. denied*, 522 U.S. 954, 118 S.Ct. 377, 139 L.Ed.2d 294 (1997)

*State v. Deck*, 994 S.W.2d 527, 537 (Mo. banc), *cert. denied*, 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999)

*State v. Barnett*, 980 S.W.2d 297, 303 (Mo. banc 1998), *cert. denied*, 525 U.S. 1161, 119 S.Ct. 1074, 143 L.Ed.2d 77 (1999)