

# In the Missouri Court of Appeals
# Eastern District

## DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102361 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Honorable Timothy J. Wilson |
| SELOUS R. RASHAD, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 22, 2016 |

## Introduction

Appellant Selous Rashad ("Rashad") appeals from the judgment entered by the Circuit Court of the City of St. Louis following a jury trial. The jury convicted Rashad of two counts of first-degree attempted forcible sodomy, in violation of Section 566.060;[1] two counts of first-degree attempted statutory sodomy, in violation of Section 566.062; and one count of first-degree child molestation, in violation of Section 566.067. Rashad was sentenced to life in prison without parole as a prior and persistent offender and a persistent sexual offender. Rashad now contends on appeal that the trial court clearly erred in overruling his Batson challenges.[2] Because the trial court did not clearly err in denying Rashad's Batson challenges in light of the

---

[1] All statutory references are to RSMo. (Cum. Supp. 2012).
[2] Batson v. Kentucky, 476 U.S. 79 (1986).

totality of the facts and circumstances surrounding this case, we affirm the judgment of the trial court.

## Factual and Procedural History

Rashad was indicted as a prior and persistent offender and persistent sexual offender on two counts of first-degree attempted forcible sodomy, in violation of Section 566.060; two counts of first-degree attempted statutory sodomy, in violation of Section 566.062; and one count of first-degree child molestation, in violation of Section 566.067, resulting from an incident on April 27, 2013.[3] Rashad's jury trial commenced on October 20, 2014. During voir dire, Rashad raised Batson challenges alleging racial bias to the State's peremptory strikes of venirepersons Jackson, Featherson, and Harris. Venirepersons Jackson, Featherson, and Harris were African-American, like Rashad, the victim, and all but one of the witnesses.

With regard to the first Batson challenge, the State struck venireperson Jackson, who attended school for business analysis and worked as a business analyst for United Healthcare. The State explained that it exercised its peremptory strike because it disfavored "jurors who do highly-technical work such as financial or technical analysis." Defense counsel argued that the State's explanation for its peremptory strike was pretextual because Jones, a white venireperson who was not struck, was similarly situated as an investigator for financial crimes at Wells Fargo. The State responded that it considered investigative work to be "different than being an analyst." The trial court found that the State's explanation was sufficient, and ruled the State's peremptory strike of Jackson was race-neutral.

With regard to the remaining two Batson challenges, the State exercised its peremptory challenge against venirepersons Featherson and Harris. The State explained that Featherson and

---

[3] Rashad does not contest the sufficiency of the evidence on appeal, thus an extensive recitation of the facts surrounding the crime is not necessary.

2

Harris were struck because they had a record of felony arrests. Defense counsel noted that venireperson Wisner was a similarly situated white male who was not challenged by the State. Wisner, like Featherson and Harris, had a prior felony arrest. In response to defense counsel's Batson challenge, the State acknowledged that Wisner was similary situated to Featherson and Harris. The State explained its failure to strike venireperson Wisner as an oversight as it informed the trial court, "I quite honestly didn't notice Mr. Wisner's prior [arrest]. I mean, I see my note here, but I did not notice it. That's my only explanation." The trial court found that the explanation provided by the State was not pretextual, reasoning:

> Well, again, I think in the realm of peremptory strikes, based on my history with both attorneys before me, I've never found either one to engage in racial animosity on strikes or presentation of a case, so on that basis in the field of a peremptory strike, I'm going to allow it.

Rashad was found guilty of two counts of first-degree attempted forcible sodomy, two counts of first-degree attempted statutory sodomy, and one count first-degree child molestation. Having found Rashad a prior and persistent offender and a persistent sexual offender, the trial court sentenced Rashad to four terms of life imprisonment without the possibility of parole on the attempted forcible-and statutory-sodomy counts. The trial court also sentenced Rashad to thirty years' imprisonment for first-degree child molestation.

Rashad filed his timely Notice of Appeal. This appeal follows.

### Points on Appeal

Rashad presents three points on appeal, each of which is centered on Rashad's Batson challenges. Rashad first alleges that the trial court clearly erred in overruling his Batson challenge of venireperson Jackson. Specifically, Rashad contends that his equal-protection rights were violated because the State failed to strike a white juror who also did "highly-technical work." In his second and third points on appeal, Rashad claims that the trial court

3

clearly erred in denying his Batson challenges to the State's peremptory strikes of venirepersons Featherson and Harris, who were struck for having prior felony arrests. Specifically, Rashad contends that the strikes of Featherson and Harris were pretextual because the State did not strike venireperson Wisner, a similarly situated white venireperson with a prior felony arrest.

## Standard of Review

In reviewing a trial court's findings relating to a Batson challenge, the trial court "is accorded great deference because its findings of fact largely depend on its evaluation of credibility and demeanor." Kesler-Ferguson v. Hy-Vee, Inc., 271 S.W.3d 556, 558 (Mo. banc 2008). The trial court's ruling on a Batson challenge is only overruled if its decision is clearly erroneous. State v. McFadden, 369 S.W.3d 727, 739 (Mo. banc 2012) ("McFadden III"). A decision is clearly erroneous if we are left with a "definite and firm conviction that a mistake has been made." State v. McFadden, 216 S.W.3d 673, 675 (Mo. banc 2007) ("McFadden II").

## Discussion

Batson declared that it is a violation of the Equal Protection Clause for a party to exercise a peremptory strike of a potential juror solely on the basis of that juror's race, ethnicity, or gender. Batson, 476 U.S. at 89; McFadden III, 369 S.W.3d at 739. The Supreme Court reasoned that "those on the venire must be 'indifferently chosen,' to secure the defendant's right under the Fourteenth Amendment to 'protection of life and liberty against race or color prejudice.'" Batson, 476 U.S. at 86–87, (quoting Strauder v. West Virginia, 100 U.S. 303, 309 (1880)).

Missouri courts have established a three-step procedure for evaluating a Batson challenge. State v. Murray, 428 S.W.3d 705, 711 (Mo. App. E.D. 2014) (citing McFadden III, 369 S.W.3d at 739). First, the party raising the Batson challenge must object to the strike of a specific venireperson, and identify the protected class to which the venireperson belongs. State

4

v. Parker, 836 S.W.2d 930, 939 (Mo. banc 1992). Second, the party exercising the strike has the burden of coming forward with a specific and race-neutral explanation for striking the venireperson. Id. We require that the proponent's explanation be more than a mere denial of discriminatory purpose. McFadden II, 216 S.W.3d at 675. However, the proffered explanation will be deemed race-neutral if it is not inherently discriminatory. State v. Marlowe, 89 S.W.3d 464, 468–469 (Mo. banc 2002). Third, if the second step is satisfied, the burden shifts back to the party raising the Batson challenge to prove that the proffered explanation was pretextual and that the strike was truly motivated by racial animus. Murray, 428 S.W.3d at 711.

In each of his three Batson challenges Rashad contends that the explanation offered by the State for its peremptory strikes is a mere pretext for racial animus. This Court has thoroughly stated the analysis for our review of pretext in a Batson challenge as follows:

> We determine whether an explanation is pretextual by considering if it is plausible in light of the totality of the facts and circumstances of the case. Parker, 836 S.W.2d at 939. A plausible explanation is one that is race-neutral, clear and reasonably specific, legitimate, and related to the facts or issues of the case. McFadden [II], 216 S.W.3d at 676. "A legitimate reason is not one that makes sense but one that does not deny equal protection." State v. Weaver, 912 S.W.2d 499, 509 (Mo. banc 1995). Nevertheless, "implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination." Marlowe, 89 S.W.3d at 469 (quoting Purkett v. Elem, 514 U.S. 765, 768, 115 S.Ct. 1769, 131 L.Ed.2d 834 (1995)). Additionally, we will consider a list of non-exclusive factors, including: "the explanation in light of the circumstances; similarly situated jurors not struck; the relevance between the explanation and the case; the demeanor of the [prosecutor] and excluded venire members; the court's prior experiences with the prosecutor's office; and objective measures relating to motive." State v. Johnson, 284 S.W.3d 561, 571 (Mo. banc 2009). Although the presence of similarly situated panelists who remain on the panel is "crucial," and "often determinative of pretext," their presence is not dispositive of pretext. Bateman, 318 S.W.3d at 684, 690.

State v. Murray, 428 S.W.3d at 711.

5

With this guidance, we consider each of the Batson challenges raised by Rashad.

## I.     Point One—Venireperson Jackson

Rashad argues that the trial court clearly erred in overruling his Batson challenge to the State's peremptory strike of venireperson Jackson because a similarly situated white venireperson, Jones, was not struck. We disagree.

Applying the first step of the Batson test, Rashad successfully made a prima facie case of racial discrimination. Defense counsel made a timely objection and stated that he was raising a Batson challenge to the State's peremptory strike of venireperson Jackson. The record shows that Jackson was identified as an African-American male and, thus, belongs to a cognizable racial group.

Proceeding to the second step, the State offered a race-neutral explanation for its strike of Jackson. The State explained that Jackson was an analyst at United Healthcare, and that it disfavored jurors who perform "highly-technical work such as financial or technical analysis" because analysts "don't do a good job accepting the kinds of ambiguities that we encounter in life." The trial court accepted the State's reasoning, and found the peremptory strike of Jackson to be race-neutral.

In the third step, Rashad responded that the State's reason for its peremptory strike of Jackson was pretextual because venireperson Jones was a similarly situated white venireperson who was not challenged by the State. The record indicates that Jones worked at Wells Fargo and investigated financial crimes. Although defense counsel identified venireperson Jones as a similarly situated white juror, the trial court found no racial animus in the State's exercise of its peremptory challenge and accepted the State's reasoning that an analyst is "different" from an investigator. The trial court found this explanation "sufficient in the realm of a peremptory

6

strike." On appeal, the State maintains that an analyst strictly relies on the outcomes of numbers, whereas an investigator does not depend solely on numbers, but instead is required to address ambiguities within his or her analysis to reach conclusions. We are persuaded that this distinction matters. A reasonable attorney might distinguish between a juror who is comfortable making a decision by resolving ambiguities and a juror who regularly relies upon number-crunching to dictate an outcome. The State's explanation is plausible in that it is clear, reasonably specific, legitimate, and related to the issues presented in the case. We are persuaded that the State's explanation of its peremptory strike against venireperson Jackson was plausible. Venirepersons Jackson and Jones are distinguishable in that Jones was not a similarly situated white juror.

We note also a high degree of logical relevance between the State's explanation for striking venireperson Jackson and the case to be tried. To determine logical relevance, the trial court can consider both the crime charged in the present case and the evidence which will be introduced at trial. State v. Carter, 415 S.W.3d 685, 689 (Mo. banc 2013). Here, the State's reasoning for striking a highly technical analyst from the jury panel is logically relevant to this case, as a juror may be called upon to assess ambiguities throughout the trial and draw conclusions based on imperfect knowledge of the facts. The evidence in this case came from the oral testimony of various witnesses. The testimony related to the alleged incident and what happened thereafter. The only witness to the crime was the nine-year-old victim. The State presented no corroborating physical evidence or other eyewitness to the incident. The defense challenged the credibility of the victim by focusing on purported discrepancies in what the victim told his grandmother following the incident, the subsequent conduct of the victim's mother, and the evidence of the victim's purported interest in watching sexual related videos and Internet

7

images. Without question, a juror might be required to assess the ambiguities and conflicting arguments in reaching a verdict, and might be required to draw conclusions based upon an imperfect knowledge of what happened on the day in question.

Lastly, in analyzing the State's credibility and past experience with the trial court, this Court must review the trial court's decision with great deference. State v. Davis, 835 S.W.2d 525, 528 (Mo. App. E.D. 1992). Here, the trial court found that, while a peremptory strike "cannot be allowed if it's one exuding or showing racial animus," it did not "perceive that here." The trial court was in the best position to assess the true motivation for the State's peremptory strike of Jackson based on the State attorney's demeanor and the trial court's past experience with the attorney. Id.

Because we are not firmly and definitely convinced the State's reason for striking Jackson was pretextual, the trial court did not clearly err in denying Rashad's Batson claim. Point One is denied.

## II.    Points Two and Three—Venirepersons Featherson and Harris

In his final two points on appeal, Rashad contends that the trial court clearly erred in denying his Batson challenges to the State's peremptory strikes of venirepersons Featherson and Harris because the State did not also strike a similarly situated white juror, Wisner. By not striking Wisner, Rashad contends that the State participated in impermissible racial discrimination. We consider these points together as Rashad offers the same legal argument for both.

As with his objection to venireperson Jackson, Rashad satisfied the first step of the Batson test by timely objecting to the State's peremptory strikes to remove venirepersons Featherson and Harris. The record shows that defense counsel clearly stated he was raising a Batson challenge and then identified venireperson Featherson and, later, venireperson Harris.

8

The record also reflects that both Featherson and Harris were African-American and, thus, members of a cognizable racial group.

Proceeding to the second step, the State explained that it exercised its peremptory strikes against venirepersons Featherson and Harris because they each had a felony arrest. The trial court found that the State's reason was race-neutral. We agree.

As we move to the the third and final step of our Batson analysis, we appreciate that the facts of this case present a unique challenge. Here, unlike the many Batson-challenge opinions we have reviewed, the State admits that a white venireperson similarly situated to the stricken black venirepersons was not stricken by the State and served on the jury panel. These facts, at first glance, may suggest the presence of racial bias in the jury-selection process. The State's proffered explanation for its jury strikes must be reconciled against this suggestion of bias if the State is to withstand the Batson challenges to venirepersons Featherson and Harris.

As we proceed with the third step, we are directed to consider a broad range of factors in determining pretext. State v. Bateman, 318 S.W.3d 681, 690 (Mo. banc 2010). Indeed, there is rarely a simple litmus test for examining pretext. Id. Although not dispositive, the factor of similarly situated jurors is "crucial" in determining pretext. Marlowe, 89 S.W.3d at 469. After the State explained its reason for striking Featherson and Harris, defense counsel informed the trial court that Wisner, a white venireperson not challenged by the State, also had a prior felony arrest of aggravated battery and was therefore similarly situated. In response, the State explained that not challenging Wisner was a mere oversight on his part, and that he "quite honestly didn't notice Mr. Wisner's prior." We are presented with the unique and different situation where both the State and the defense counsel recognized Wisner as a similarly situated white juror who was not stricken by the State.

9

There is a high degree of logical relevance between the State's challenge of venirepersons with felony arrests and the case to be tried. Just as Featherson and Harris had been arrested for felonies, Rashad was charged with several felonies. The State's desire to remove any potential bias either favoring the accused or against law enforcement from the jury panel by striking venirepersons with felony arrests is patently reasonable. Of course, a logical extension of the State's reasoning suggests that the State would also exercise a peremptory challenge against venireperson Wisner, who also had a prior felony arrest. The record reflects that the only difference between venirepersons Featherson and Harris and venireperson Wisner was race. The State maintains that because mistake, rather than racial animus, was its motivation in striking Featherson and Harris from the jury panel while retaining Wisner, Rashad's Batson challenge must fail. Rashad argues that the presence of a similarly situated white juror, given the facts of this case, mandates a holding that the trial court erred in overruling his Batson challenge, and that we must reverse his criminal convictions. We have found no case presenting a Batson challenge with exactly the same facts before us. However, despite the lack of judicial authority with identical facts, we are not without guidance.

As previously noted, in determining pretext, the primary consideration is the "plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." State v. Johnson, 207 S.W.3d 24, 35 (Mo. banc 2006). Among the factors the trial court may consider when deciding a Batson challenge are "the prosecutor's credibility based on his or her demeanor or statements during voir dire and the court's past experiences with the prosecutor." State v. Strong, 142 S.W.3d 702, 712 (Mo. banc 2004) (citation and quotations omitted).

10

We fully acknowledge that the State's explanation for its failure to strike the similarly situated white venireperson is an explanation we previously have not seen. Nor have we found such an explanation in other judicial authority analyzing a Batson challenge. The State does not attempt to distinguish any characteristics between the stricken black venirepersons and the seated white venireperson in an effort to justify the difference in treatment. Instead, the State attributes its failure to exercise a peremptory challenge against Wisner to an oversight. Whether we would find this explanation plausible is not at issue. The trial court found the explanation plausible, and correspondingly, found the State's action in striking venirepersons Featherson and Harris lacking in any racial-animus. The issue before us is whether the State's proffered explanation is such an "implausible or fantastic justification[]" that the trial court should have found it to be a pretext for purposeful discrimination. See Marlowe, 89 S.W.3d at 469. Because "[t]he focus at this stage of the inquiry is upon the plausibility of the prosecutor's explanation in view of the totality of the facts and circumstances of the case ... [m]uch of the determination, by necessity, turns upon evaluation of intangibles such as credibility and demeanor. Trial judges are, therefore, vested with considerable discretion in determining whether the defendant established purposeful discrimination." Parker, 836 S.W.2d at 934.[4]

---

[4] The concurring opinion presents a passionate and well reasoned discourse on the impact of racial bias on the integrity of the justice system, and offers a suggestion for continued dialogue to address implicit or unconscious bias in light of the current guideposts implemented by our Supreme Court following Batson. However, any suggestion that intimates abandonment of the long-held principle of appellate deference to credibility determinations made by the trial court represents a stark departure from a well-established judicial principle which permeates the standard of review for appellate courts, a standard not limited to Batson issues. See In re K.A.W., 133 S.W.3d 1, 23 (Mo. banc 2004)
("Appellate courts should recognize that the trial court occupies a superior position from which to judge the credibility of witnesses and their character, sincerity, and other intangibles that might not be completely shown in the cold record.") (internal quotations omitted); White v. Dir. of Revenue, 321 S.W.3d 298, 308-09 (Mo. banc 2010)
("Appellate courts defer to the trial court on factual issues because it is in a better position not only to judge the credibility of witnesses and the persons directly, but also their sincerity and character and other trial intangibles which may not be completely revealed by the record.") (internal quotations omitted); Hernandez v. New York, 500 U.S. 352, 365 (1991) ("Deference to trial court findings on the issue of discriminatory intent makes particular sense in this context because, as we noted in Batson, the finding 'largely will turn on evaluation of credibility.' In the typical peremptory challenge inquiry, the decisive question will be whether counsel's race-neutral explanation for a

11

Here, the trial court did not find the prosecuting attorney's conduct to be racially motivated. The trial court considered its history with the attorneys, and expressly stated that it had "never found either one to engage in racial animosity on strikes or presentation of a case." The trial court examined the issue of racial animus raised by defense counsel and clearly rejected the suggestion that the State's striking of Featherson and Harris was racially motivated. Defense counsel raises a legitimate concern that prosecutors may use a disingenuous explanation as simple as, "Oops, I forgot," to explain away a racially motivated peremptory challenge. To guard against such deception, Missouri case law mandates that the trial court examine the explanation and, considering the totality of the circumstances, determine if the explanation is a subterfuge for insidious racial discrimination. The record reflects that the trial court gave Rashad's <u>Batson</u> challenges to the peremptory strikes of Featherson and Harris full consideration and reflection. Because the trial court was in a far superior position to observe and assess the prosecutor's demeanor throughout the entire jury selection process, we defer to its finding that the prosecutor's demeanor and statements did not indicate pretext. <u>State v. Dominguez-Rodriguez</u>, 471 S.W.3d 337, 346 (Mo. App. E.D. 2015).

Further, other than the issue relating to the venireperson Wisner, we find nothing in the record that would suggest the State purposefully struck venirepersons Featherson and Harris due

peremptory challenge should be believed. There will seldom be much evidence bearing on that issue, and the best evidence often will be the demeanor of the attorney who exercises the challenge. As with the state of mind of a juror, evaluation of the prosecutor's state of mind based on demeanor and credibility lies 'peculiarly within a trial judge's province.'") (internal citations omitted).

The standard of deferring to the credibility determinations of a trial court does not portend an abdication of review by the appellate courts. Indeed, our analysis of the <u>Batson</u> challenges presented in this case carefully considers the full record of this matter beyond voir dire, including the final racial make-up of the jury, defendant and witnesses. Bias can and does present itself in many forms and can be difficult to identify. We express confidence in the established legal principles which position the trial court as the gatekeeper best able to root out bias from the administration of justice in our courts. We support the recommendation of the concurring opinion for further examination of the tools provided to our trial courts to recognize and dispel bias from jury trials, but express grave reservation to any retreat from the current standard of review according deference to the credibility determinations of our trial courts.

12

to racial animus. When reviewing a claim of pretext, we may consider whether the State exercised a disproportionate number of strikes against other minority venirepersons, as well as the number of minority venirepersons remaining after completion of peremptory strikes. Bateman, 318 S.W.3d at 691. Rashad does not claim that the prosecutor used a disproportionate number of strikes against minorities or allege the presence of other objective factors suggesting pretext. Here, the final make-up of the jury included four African-Americans on the jury panel and one African-American (of two) as an alternate juror. We recognize that the presence of one or more African-American or other minority on the jury does not insulate the prosecutor from a claim of pretext. Id. But, we discern from the record that the trial court presided over the voir-dire selection in a thorough and meaningful manner. We are confident from our review of the entire record that the trial court was ably positioned and motivated to identify any tokenism on the part of the State and to prevent the infiltration of racial animus into the jury selection process.

As part of our analysis, we also consider other objective factors that could suggest a motive to discriminate on the basis of race, such as the race of the defendant, the victim, and the material witnesses. Parker, 836 S.W.2d at 940. The facts of this case do not even hint at a motive to discriminate. Both the victim and Rashad were African-American. The investigating police detective was African-American. The family witnesses were African-American. The case did not present any issues of cross-racial identification. The case does not involve any of the law-enforcement issues that have stoked racial tensions in the community. Nothing in the factual make-up of this matter suggests a motive for racial discrimination on the part of the State.

As noted, our courts have previously recognized that the presence of a similarly situated juror, while a crucial factor to consider, is not determinative of the issue of pretext. Marlowe, 89 S.W.3d at 469. We do not minimize the significance of the presence of a similarly situated juror

13

in a Batson analysis. Indeed, we recognize the implications raised by that scenario in Marlowe, supra, and State v. McFadden, 191 S.W.3d 648, 657 (Mo. banc 2006) ("McFadden I") (holding the State's failure to distinguish the African-American venirepersons from the similarly situated white jurors was obvious prejudice requiring reversal and remand). But Rashad asks this Court to abandon that principle and adopt a rule that focuses not on the racial motivation of the prosecutor, but simply on the presence of a similarly situated venireperson of a different race on the jury panel. To proceed in such a manner requires us to forego our analysis in light of the "totality of the facts and circumstances of the case." This we will not do. Just as the absence of a similarly situated white juror is not dispositive of the issue of pretext, Bateman, 318 S.W.3d at 690, neither is the presence of a similarly situated white juror dispositive of pretext. We are satisfied that the trial court meaningfully reviewed the totality of the facts and circumstances presented when applying the Batson analysis to Rashad's challenge of the State's peremptory strikes.

Because we are not left with a definite and firm impression that the State's peremptory strikes of Featherson and Harris were pretextual, Rashad did not meet his burden of showing pretext. Thus, the trial court did not clearly err in denying Rashad's Batson challenges. Points Two and Three are denied.

## Conclusion

For all of the reasons stated above, and giving appropriate deference to the trial judge's ability to judge the credibility of the prosecutor's reasons, the trial court did not err in finding that the peremptory strikes exercised by the State were race-neutral in "light of the totality of the facts and circumstances surrounding the case." Parker, 836 S.W.2d at 939. This Court is not

14

"left with the definite and firm conviction that a mistake has been made." McFadden II, 216

S.W.3d at 675. Accordingly, the judgment of the trial court is affirmed.

_Kurt S. Odenwald_
KURT S. ODENWALD, Judge

Sherri B. Sullivan, P.J., concurs.
Lisa Van Amburg, C.J., concurs in separate opinion.

15



# In the Missouri Court of Appeals
## Eastern District
### DIVISION FOUR

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED101986 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court of |
| | ) | the City of St. Louis |
| vs. | ) | |
| | ) | |
| SELOUS R. RASHAD, | ) | Hon. Timothy J. Wilson |
| | ) | |
| Appellant. | ) | FILED: March 22, 2016 |

## CONCURRING OPINION

I concur in result with the majority opinion because <u>Batson</u> requires a finding of purposeful discrimination and, deferring to the trial court as our standard of review requires, I cannot firmly conclude from this record that the trial court's ruling is clearly erroneous.

Missouri courts cannot ignore, however, the growing body of evidence that racial bias, whether purposeful or unconscious, impacts jury selection to the detriment of citizens of color and the integrity of our justice system. In the wake of Ferguson and two separate investigations by the U.S. Department of Justice finding racial disparity in the treatment of defendants in St. Louis County, the Supreme Court of Missouri established a Commission on Racial and Ethnic Fairness to examine current practices and recommend improvements to ensure fairness and impartiality in the judicial process. Concurrently, Missouri judges will receive "implicit bias" training as part of this year's judicial education curriculum. As Chief Judge Breckenridge

recently observed in her State of the Judiciary address to the General Assembly, "even a perception that justice is contingent on the color of one's skin ... should concern us all."[1]

I do not, as the majority suggests, "intimate abandonment of the long-held principle of appellate deference to credibility determinations made by the trial court." Implicit bias, precisely because it is a subconscious phenomenon, does not lend itself to credibility determination by trial judges. Consequently, Batson and its proof framework does not and cannot address implicit bias in jury selection. We are not the only jurists grappling with the limitations of Batson in the face of voluminous research confirming the perpetuity of racial bias despite three decades of Batson challenges. Our colleagues in Washington offer a thorough examination and discussion in State v. Saintcalle, 309 P.3d. 326 (Wa. 2013).[2] While the entire plurality opinion warrants consideration, certain observations relevant here can be summarized as follows.

"The human mind must think with the aid of categories. We cannot possibly avoid this process. Life is just too short to have differentiated concepts about everything." Id. at 335, citing Antony Page, *Batson's Blind-Spot: Unconscious Stereotyping and the Peremptory Challenge*, 85 B.U. L. Rev. 155, 185 (2005).[3] But the fact that discrimination is frequently unconscious does not make it any less pernicious. Id. at 336. "People are rarely aware of the actual reasons for their discrimination and will genuinely believe the race-neutral reason they create to mask it." Id. at 335, citing Page. At the same time, however, "attorneys ... rely on stereotypes and generalizations to guide the use of peremptory challenges in an attempt to obtain the most

---

[1] https://www.courts.mo.gov/page.jsp?id=96693.

[2] See also Miller-El v. Dretke, 545 U.S. 231, 266-273 (J. Breyer, concurring), and Judge Mark W. Bennett, *Unraveling the Gordian Knot of Implicit Bias in Jury Selection: The Problems of Judge-Dominated Voir Dire, the Failed Promise of Batson, and Proposed Solutions*, 4 Harv. L. & Pol'y Rev. 149, 158 (2010).

[3] Readers interested in testing their own biases can find myriad online tools for that purpose. One reputed resource is the Implicit Association Test (IAT) developed by scientists from Harvard University, the University of Washington, the University of Virginia, and Yale University. www.projectimplicit.com.

favorable jury possible in a given case."[4] Id. at 355, citing *inter alia* HALE STARR & MARK MCCORMICK, JURY SELECTION (4th ed. 2010). "It would be naïve to think that attorneys do not rely on readily available and plausible race-neutral reasons to circumvent <u>Batson</u>." Id. at 359. "Any attorney worth his salt can make up something to get over a Batson challenge. And literally ... [they] do.'" Id., citing Star & McCormick (quoting a prosecutor). So, whether a prosecutor is genuinely unaware of his bias or just adept at concealing it, when <u>Batson</u>'s third step hinges on credibility, the result is the same. The defendant's burden of proving pretext is virtually insurmountable.

Here, the State's explanation for striking an African-American financial analyst but not a white financial investigator is suspect. Both jurors earned a living drawing conclusions from numerical information. Even accepting the State's dubious assertion that analyzing numbers is different than investigating them, by the State's logic, based solely on stereotypes and generalization, expertise in math and "number-crunching" renders entire sectors of our labor force incapable of abductive reasoning and thus unfit to serve. This is not a credible hypothesis. Although we must defer to the trial court's finding and refrain from speculating whether the State would have struck a white analyst, the empirical evidence illustrates the need for careful scrutiny. In one study, attorneys were given two juror profiles, identical in all respects except for race, and instructed to strike one. Attorneys struck the black profile with significantly greater frequency, but hardly any of them recognized race as a factor. Id. at 357-358 citing Samuel R. Sommers & Michael I. Norton, *Race-Based Judgments, Race-Neutral Justifications:*

---

[4] To be sure, attorneys on both sides of a given case engage in this practice.

*Experimental Examinations of Peremptory Use and the Batson Challenge Procedure*, 31 LAW & HUM. BEHAV., 261, 266-267 (2007).[5] [6]

Additionally, psychological tendencies such as confirmation bias (seeking to confirm rather than contradict a hypothesis) and selective information processing (accepting confirming evidence but ignoring contradictory evidence) operate to entrench attorneys' pre-existing biases, including racial stereotypes and generalizations. Id. at 364, citing Alafair S. Burke, *Prosecutors and Peremptories*, 97 IOWA L. REV. at 1480-81 (2012). Here, the State's failure to notice a white juror's felony record while striking two black jurors with felonies could be characterized as selective information processing. But Batson provides no remedy for unconscious discrimination, and we are bound by the trial court's finding that it was an oversight.

---

[5] In one condition of the experiment, the first profile was white and the second was black. Attorneys struck the black juror 57% of the time and the white juror 21% of the time. In another condition, the first profile was black and the second was white. Attorneys struck the black juror 79% of the time and the white juror 43% of the time. Almost all attorneys (96%) cited race-neutral substantive justifications and very few (8%) admitted that race was influential at all.

[6] "Evidence from other jurisdictions confirms that racial discrimination in the use of peremptory challenges is widespread. Numerous studies in other states have consistently and uniformly shown a significant influence of race on the use of peremptory challenges in actual practice. Racial disparities in peremptory usage have been documented in the courts of Alabama, Georgia, Illinois, Louisiana, North Carolina, Pennsylvania, and Texas. See Equal Justice Initiative, Illegal Racial Discrimination in Jury Selection: A Continuing Legacy 14 (2010) (noting studies finding substantial racial disparities in peremptory usage in Alabama, Georgia, and Louisiana); Catherine M. Grosso & Barbara O'Brien, *A Stubborn Legacy: The Overwhelming Importance of Race in Jury Selection in 173 Post–Batson North Carolina Capital Trials*, 97 Iowa L. Rev. 1531, 1538–40 & n. 55 (2012) (discussing studies of peremptory challenge usage finding racial disparities in Illinois, Louisiana, North Carolina, Pennsylvania, and Texas). Many of these studies have found that, even after controlling for numerous other potentially relevant factors, race remains highly determinative of peremptory usage. See Grosso & O'Brien, *supra*, at 1533, 1547, 1552–54 (review of capital trials in North Carolina finding that even after controlling for 65 other variables, "a black venire member had 2.48 times the odds of being struck by the state as did a venire member of another race"); Starr & McCormick, *supra*, at 17–7 to 17–8 (discussing a comprehensive review of criminal trials in Dallas finding widespread racial disparities and also finding that " 'no factor reduced the importance of race' " (quoting Steve McGonigle et al., *Jurors' Race A Focal Point For Defense: Rival Lawyers Reject Whites at Higher Rate*, The Dallas Morning News, Jan. 24, 2006)); David C. Baldus et al., *The Use of Peremptory Challenges in Capital Murder Trials: A Legal and Empirical Analysis*, 3 U. Pa. J. Const. L.. 3, 46, 60, 72, 121 (2001) (review of Philadelphia capital murder cases finding that even after controlling for numerous variables "venire member race was a major determinant in the use of peremptories")." Saintcalle, 309 P.3d at 357.

Batson's criterion of purposeful discrimination is all the more troublesome in that it essentially "requires judges to accuse attorneys of deceit and racism in order to sustain" the challenge. Id. at 338, citing Robin Charlow, *Tolerating Deception and Discrimination After Batson*, 50 STAN. L. REV. 9, 11 (1997) (noting one judge's "uncomfortable feeling that she had just rendered an official ruling that the attorney was lying to the court"). And if the judge resolves that dilemma by ruling in the State's favor, the problem is compounded by our deference to the trial court's assessment of credibility.

Simply put, we cannot pretend that Batson adequately addresses racial bias in jury selection. In my view, we must prioritize the guaranty of a fair trial in the State of Missouri by acknowledging the reality of unconscious bias in our courtrooms and joining the national conversation seeking alternatives to Batson.

_____
Lisa Van Amburg, Chief Judge

5