

# In the Missouri Court of Appeals
# Eastern District

<u>DIVISION THREE</u>

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED106127 |
| | ) | |
| Plaintiff/Respondent, | ) | Appeal from the Circuit Court |
| | ) | of St. Charles County |
| vs. | ) | |
| | ) | |
| ANTONIO DAMON COURTNEY, | ) | |
| | ) | Honorable Deborah J. Alessi |
| | ) | |
| Defendant/Appellant. | ) | Filed: July 23, 2019 |

<u>Introduction</u>

Antonio Damon Courtney (Appellant) appeals the trial court's judgment following a jury trial convicting him of class B felony assault in the first degree, unclassified felony armed criminal action, class D felony unlawful use of a weapon, class C felony unlawful possession of a firearm, and class B felony burglary in the first degree, for which he was sentenced as a prior and persistent offender to a total of 25 years' imprisonment. We affirm.

<u>Factual Background</u>

On December 10, 2015, Kenneth Strong (Strong), a small business owner, was returning home from the barber shop with his two-year-old son. Strong brought his son into the garage and returned to his car to retrieve a package. When he returned to the garage, he encountered a man wearing a mask over half his face and holding a gun. Strong lunged for the gun, and a struggle ensued. The man struck Strong in the head with the gun several times, causing

lacerations that would require staples.  During the struggle, the gun fired; a bullet was later found lodged in Strong's house.  The man then fled through Strong's and neighbors' backyards.

Strong and several neighbors each called 911, and law enforcement responded.  A crime scene investigator processed the scene, collecting 20 blood samples from the area.  Near the blood, investigators found a Bluetooth device, which they sent to a lab for blood swabs and DNA testing.  The blood samples in the area belonged to Strong.  The DNA found on the Bluetooth device belonged to Appellant.

A short time later, law enforcement received a tip Appellant was at his girlfriend's home in St. Louis County.  Officers responded to the location, and several officers approached the front door to demand entry, while others surrounded the home to cover other exits.  As the officers knocked loudly on the door, they heard a male voice within tell someone not to open the door.  Eventually, Appellant's girlfriend answered the door.  As she answered, Appellant slipped out from a second story window, jumped to the ground, and fled.

Officers pursued Appellant for several blocks before they caught up to him when he attempted to hide under a bush.  Two detectives tried to pull Appellant out, and he began to struggle, thrash, and kick.  Officers subdued Appellant as he fought, administering some knee strikes, one or more of them hitting Appellant's face.  Detectives searched the bushes where Appellant was found, locating a cellphone.  Appellant was handcuffed and returned to his girlfriend's home to be questioned.

Upon arriving back at his girlfriend's home, Appellant was read his *Miranda* rights.[1] Appellant stated he understood his rights.  A detective asked Appellant whether he had discarded any firearms as he fled.  Appellant replied the officers would find what they were looking for

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966).

where they had arrested him. When asked why he would throw his phone away, Appellant replied, "Because they can get me in trouble," and, "I'm done, I'm f—ked, I'll die in prison, bro."

Law enforcement obtained a warrant and searched Appellant's cellphone. They found a video depicting two men surveilling Strong's home from a car while discussing plans to rob Strong. When showed this video, Strong recognized one of the voices as belonging to James Scott, an acquaintance of his. Strong knew James Scott because Strong had sold him a car, and later repossessed it due to nonpayment on the loan. Also visible in the video was a decal of a rose on the window of the car, which was the same decal as one on Appellant's girlfriend's car. James Scott later confessed to police he had been in the car with Appellant surveilling Strong's home, but Appellant was the individual who attacked Strong.

Appellant was tried before a jury and convicted of first degree assault, armed criminal action, unlawful use of a weapon, unlawful possession of a firearm, and first degree burglary. Additional facts will be adduced as necessary.

Points Relied On

Appellant makes three points on appeal. Point I claims the trial court plainly erred by allowing into evidence statements Appellant made to police officers shortly after his arrest. Point II claims the trial court plainly erred by overruling Appellant's *Batson* challenge made after the State used a peremptory challenge to strike an African-American juror. Point III claims the trial court abused its discretion by overruling Appellant's objection to the State questioning jurors about small business owners making cash deposits, which inaccurately characterized the facts of the case.

Before trial, Appellant filed a motion to suppress statements he made to police after being arrested, claiming his waiver of his *Miranda* rights was involuntary due to the physical force used by police to apprehend him. No ruling on this motion appears in the record. At trial, the State introduced as evidence Appellant's statements to police. Appellant made no objection when these statements were introduced at trial.

Motions to suppress evidence are interlocutory, and a contemporaneous objection at trial is required in order to preserve the issue for appellate review. State v. Lassen, 679 S.W.2d 363, 368 (Mo. App. S.D. 1984). Appellant acknowledges he failed to preserve this issue for review, and asks instead for plain error review. Rule 30.20.[2]

Plain error review is a two-step process. First, we consider whether Appellant's point of error facially establishes substantial grounds for believing a manifest injustice or a miscarriage of justice has occurred. State v. McKay, 459 S.W.3d 450, 455 (Mo. App. E.D. 2014) (citation omitted). If it does, we proceed to the second step and determine whether a miscarriage of justice or manifest injustice will result from the error remaining uncorrected. Id. "All prejudicial error... is not plain error[;] plain errors are those which are evident, obvious and clear." State v. Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009) (citation and internal quotation marks omitted).

Appellant makes two arguments why we must reverse the judgment of the trial court on this point. First, he argues the trial court plainly erred by not *sua sponte* excluding Appellant's statements because those statements were not made voluntarily. Appellant argues this is so

---

[2] Mo. R. Crim. P. 2017.

4

because the police used physical force in apprehending him, and thus any waiver of his *Miranda* rights is rendered involuntary and void. Appellant provides no citation for this argument.

"The test for voluntariness is whether, under the totality of the circumstances, the defendant was deprived of free choice to admit, to deny, or to refuse to answer and whether physical or psychological coercion was of such a degree that the defendant's will was overborne at the time he confessed." State v. Greathouse, 559 S.W.3d 108, 111 (Mo. App. S.D. 2018), quoting State v. Rousan, 961 S.W.2d 831, 845 (Mo. banc 1998). We are aware of no per se rule requiring all of a suspect's post-arrest statements be excluded when police employ force to arrest him. There is no indication in the record before us to show officers used any more force than was reasonable to apprehend Appellant, who was fleeing and struggling with police, and was wanted on suspicion of committing violent armed robbery. Additionally, Appellant was questioned at his girlfriend's home, blocks from where he was arrested, by a different detective than those involved in his pursuit and apprehension. On review, we are unable to conclude the trial court plainly erred by not *sua sponte* excluding Appellant's statements to police.

Appellant also argues we must remand his case to the trial court to determine whether his statements were made voluntarily because, although he filed a motion to suppress those statements, no ruling on that motion appears in the record. In support of his argument this entitles him to remand, Appellant cites State v. Edwards, 30 S.W.3d 226 (Mo. App. E.D. 2000). However, Edwards is easily distinguishable from the instant case, and unhelpful to Appellant.

Edwards involved a criminal defendant who challenged the admissibility of his prior statements via oral motion on the morning of trial. Id. at 229. The trial court refused to hear the motion before the beginning of trial, to which the defendant objected. Id. When the State introduced the defendant's statements, the defendant again objected. Id. At the close of

5

evidence, the trial court announced it had considered the defendant's motion, and was overruling it in its entirety. Id.

On appeal, the defendant claimed the trial court had not afforded him due process in overruling his motion. Id. Specifically, the defendant complained he had not been able to present his own testimony outside of the hearing of the jury as to the circumstances under which he made his prior statements, due to the fact the defendant had not taken the stand. Id. This Court agreed, holding that once the trial court had accepted the defendant's motion to suppress it was obligated to hear the motion outside the presence of the jury to determine whether the complained-of statements were made voluntarily. Id. at 230. Because the trial court failed to do so, the case was remanded for a post-trial hearing on the issue of whether the defendant's statements were voluntary. Id. at 231.

The circumstances are very different in the instant case. Here, Appellant sought to suppress his statements via pretrial motion. Moreover, from the record it appears that, unlike Edwards, there was a hearing on Appellant's motion outside of the hearing of the jury. Although no ruling on this motion appears in the record, this does not entitle Appellant to remand for a rehearing. From the current standpoint, it is immaterial whether the trial court granted or denied Appellant's pretrial motion, because Appellant did not object to the statement's introduction at trial. As it was explained by the court in State v. Lassen:

> The rule requiring a contemporaneous objection is not a mere technical rule of procedure. The reason for this rule, which has been variously stated, is that the real damage is not done until the evidence is introduced and the court's ruling on a motion to suppress is interlocutory. By the time the evidence is offered, the testimony received may have made the evidence admissible, and in any event, the trial court should be given an opportunity to reconsider its ruling.

679 S.W.2d at 368 (citations omitted).

6

As stated above, it is immaterial whether the trial court granted or denied Appellant's motion to suppress because that ruling was interlocutory and subject to change once the statements were offered at trial. And, unlike the defendant in Edwards, Appellant failed to object to the complained-of statements when they were offered, leaving the issue unpreserved for review.

Appellant fails to facially establish a manifest injustice or miscarriage of justice has occurred. Accordingly, Point I is denied.

Point II

Appellant's second claim is the trial court plainly erred by overruling Appellant's *Batson*[3] challenge to the State peremptorily striking Juror 11, the only African-American juror on the panel.

During voir dire, the State asked the panel if anyone felt police often used excessive force. Juror 11 was among those who raised their hands. Later, the State asked whether anyone on the panel had relatives in prison. Juror 11 indicated he did, stating his son had been prosecuted for robbery and had been treated unfairly by law enforcement. After voir dire, the State used a peremptory strike on Juror 11. Appellant objected, accusing the State of striking Juror 11 on the basis of his race. The State argued the strike was not on the basis of race, citing Juror 11's responses as the reason for its strike. After some discussion, the trial court overruled Appellant's objection. Appellant did not include this objection in his motion for a new trial, thus leaving the issue unpreserved. Appellant acknowledges this in his brief and asks we review this claim for plain error.

---

[3] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

7

Appellant argues the trial court plainly erred by overruling his objection because after he accused the State of striking Juror 11 on the basis of his race, the State was unable to rebut the accusation by identifying other jurors it had struck for the same reasons it struck Juror 11. Appellant's argument is based on a misstatement of the law.

"Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin, or race." State v. Marlowe, 89 S.W.3d 464, 468 (Mo. banc 2002), citing U.S. v. Martinez-Salazar, 528 U.S. 304, 315 (2000). If one party believes the other is striking a juror on the basis of race, they may challenge the strike in a three-step procedure: first, a party challenges the strike as being done on the basis of race; second, the other party must supply a race-neutral reason for the strike; third, the challenging party must prove the given race-neutral reasons are pretextual, and the true motivation is the juror's race. Id.

Here, Appellant challenged the State's striking Juror 11 as being on the basis of his race. In response, the State supplied an adequate, race-neutral reason for its strike: Juror 11 had indicated both his belief police often use excessive force and that law enforcement had treated his son unfairly when he was prosecuted for robbery. These reasons are race-neutral, related to the case, clear, specific, and legitimate. See State v. McFadden, 216 S.W.3d 673, 676 (Mo. banc 2007).

At this point, the burden is shifted to Appellant to prove these reasons are pretextual. Marlowe, 89 S.W.3d at 468. One way he may prove this is by successfully arguing the explanation itself is deficient, in that it fails to articulate a plausible, legitimate, case-related reason to strike the juror. McFadden, 216 S.W.3d at 676. But as stated above, the State's given reasons were legitimate, plausible, and related to the instant case. Juror 11 said he believed

8

police often used excessive force; Appellant believes excessive force was used to apprehend him. Juror 11 also said law enforcement had treated his son unfairly when he was prosecuted for robbery; Appellant was being tried for committing a similar crime. The reasons given by the State for striking Juror 11 articulated an adequate, race-neutral reason for doing so.

Appellant does not take issue with the substance of the State's given reasons for the strike, however. Rather, Appellant argues the reasons must be disingenuous because the State failed to point to other jurors it struck on the same basis. It is true an important factor the trial court must consider is whether other non-African-American jurors similarly situated to the struck juror were also struck. State v. Thomas, 407 S.W.3d 190, 196 (Mo. App. E.D. 2013). However, Appellant's argument incorrectly places the burden of pointing to similarly situated jurors on the State. It is Appellant's burden to prove the State's proffered reasons are pretextual. Marlowe, 89 S.W.3d at 468. One way it may do so is identifying similarly-situated white jurors who were not struck. Id. Once the State proffers race-neutral reasons for its strike, it has no burden to identify other similarly situated jurors it also struck, especially when, as the State points out in its brief, there were no other jurors who indicated they believed police often used excessive force *and* had a family member who was treated unfairly by law enforcement when prosecuted for a similar crime. If the State were required to prove its race-neutral reasons by showing it struck other panel members for those same reasons, the State would never be able to strike a juror whose answers were unique from those of the rest of the panel.

The State's reasons for striking Juror 11 were legitimate and race-neutral. Appellant was unable to prove otherwise. The trial court did not err, plainly or otherwise, by overruling Appellant's objection. Point II is denied.

9

<u>Point III</u>

Appellant's final claim relates to questions asked by the State during voir dire. The State asked the panel whether anyone owned a small business, and whether any business owners feared being robbed when making cash deposits for their businesses. After the State asked several small business owners the same question, counsel for Appellant asked to approach the bench. Counsel for Appellant objected to the line of questioning because there was no evidence Strong was coming from his business to make a cash deposit when Appellant robbed him, and so the questions were misleading. At this, the State said it was finished with those questions and intended to move on from the subject. Appellant requested no relief from the trial court. Later during voir dire, Appellant again brought up this line of questioning to the trial court, stating on the record that he did not want a mistrial, but wanted to make his objection continuing. Appellant stated he hoped he could cure whatever prejudice may have resulted in his own voir dire. Appellant's objection to the State's line of questioning was included in Appellant's motion for a new trial.

In his brief, Appellant insists his objection to the trial court was sufficient to preserve the issue for appellate review. We disagree. "Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court." <u>In re Adoption of C.M.B.R.</u>, 332 S.W.3d 793, 814 (Mo. banc 2011) (internal quotations omitted), abrogated in part on unrelated grounds by <u>S.S.S. v. C.V.S.</u>, 529 S.W.3d 811 (Mo. banc 2017). In order to preserve an issue for appellate review, a contemporaneous objection is required at the time the issue presents itself at trial. <u>Baumruk</u>, 280 S.W.3d at 615.

It is true Appellant objected at trial to the State's line of questioning. However, Appellant's objection was sustained, and Appellant received all the relief he requested: the State was no longer permitted to ask the offending line of questions, and the trial court granted Appellant leeway to purge any prejudice that might have occurred with his own voir dire. Not only did Appellant not request a mistrial, he affirmatively stated he did not want one. "A party cannot fail to request relief, gamble on the verdict, and then, if adverse, request relief for the first time on appeal." State v. Bennett, 201 S.W.3d 86, 88 (Mo. App. W.D. 2006), citing State v. McGee, 848 S.W.2d 512, 514 (Mo. App. E.D. 1993). We will not convict the trial court of error for failing to grant a mistrial when Appellant announced he did not want one. Thus, we review only for plain error.

"To be entitled to relief under the plain error rule, a defendant must go beyond a mere showing of demonstrable prejudice to show a manifest injustice affecting substantial rights." Id., citing State v. Parker, 856 S.W.2d 331, 332 (Mo. banc 1993). "Even if the argument is improper, a conviction will be reversed only if it is established that it had a decisive effect on the jury's determination." Id.

On consideration of the entire record, we cannot say the State's questions had a decisive effect on the outcome of the trial. It is not clear how the State's line of questions was so substantially misleading it may have caused such prejudice the jury was unable to make a determination based on the evidence, given that Strong is a small business owner, and James Scott, Appellant's accomplice, told police he made the down payment for the car he purchased from Strong in cash. However, chiefly we consider the abundant evidence of Appellant's guilt, which we regard as likely to have affected the jury's determination a great deal more than the State's questions about small business cash deposits.

Point III is denied.

Conclusion

The judgment of the trial court is affirmed.


_____
SHERRI B. SULLIVAN, P.J.

James M. Dowd, J., and
Robin Ransom, J., concur.