STATE of Missouri, Respondent,

v.

Ronald W. DURHAM, Appellant.

Nos. WD 70075, WD 70076.

Missouri Court of Appeals, Western District.

Nov. 24, 2009.

Kent Denzel, Columbia, MO, for Appellant.

Shaun J. Mackelprang, Jefferson City, MO, for Respondent.

Before JOSEPH M. ELLIS, P.J., VICTOR C. HOWARD, and JAMES EDWARD WELSH, JJ.

JAMES EDWARD WELSH, Judge.

Ronald W. Durham appeals the circuit court's judgments convicting him of two counts of statutory rape in the first degree, two counts of use of a child in a sexual performance, two counts of child molestation in the first degree, one count of statutory sodomy in the first degree, and one count of incest. On appeal, he claims that the amended information was insufficient to charge him with statutory rape in the first degree and that the evidence was insufficient to submit the two

statutory rape charges to the jury. In the alternative, he contends that the circuit court erred in refusing his proffered jury instructions for the statutory rape in the first degree charges. Durham also alleges that the court erred in overruling his objection to the prosecutor's peremptory strike of an African–American venireperson. We affirm.

Viewed in the light most favorable to the verdict, the evidence was that Durham had three children, A.D., born January 5, 1984; R.D., born November 16, 1985; and J.D., born in 1991. One night in 1995 or 1996, Durham called R.D. and A.D. into his bedroom and asked them if they had ever been told about sex. When they indicated that they had not, Durham proceeded to show them a pornographic videotape that depicted a man and a woman having sexual intercourse. Afterwards, he instructed the children to take off their clothes.

Durham then told A.D. to lie down on her back on the bed, and he told R.D. to get on top of her. The children complied. Durham told the children to perform what they had seen on the videotape. As the children were attempting to do what they were told, Durham stood next to the bed, watching them and instructing R.D. on how to put his penis into A.D.'s vagina. The children continued to have difficulty, so Durham got some lubricant and applied it to A.D.'s vagina. When R.D. penetrated A.D's vagina with his penis, A.D. complained that it hurt. Durham began to get frustrated because "it wasn't going as to plan." R.D. and A.D. were frightened, upset, and crying. Finally, Durham told the children to put their clothes back on and not to tell their mother or anyone else what had happened. R.D. never told anyone about the incident because he was afraid of what Durham would do, as Durham had physically abused R.D., A.D., and their mother.

On several occasions after this incident, Durham would call A.D. into his bedroom and tell her to strip from the waist down. He would then order her to lie down on either a rug or on the bed. He would remove his clothes from the waist down and penetrate A.D.'s vagina with his penis. A pornographic videotape would sometimes be playing in the background. On one occasion, Durham made A.D. lie on her stomach while he masturbated until he ejaculated on her back.

On another occasion, when A.D. and Durham were on a fishing trip in Chariton County, Durham told A.D. to put her mouth on his penis and act like it was a lollipop or sucker. A.D. did this for about five or ten minutes, until Durham told her to strip from the waist down and lie on her back. Durham tried to get on top of her. A.D. fought him, so he stopped. As they drove home, he told her to stop crying and not tell anyone what had happened.

Shortly after Christmas Day in 1996, A.D. had her first menstrual period. A.D. was in the basement of the house doing laundry when Durham came downstairs. He told A.D. to strip from the waist down and face the washing machine. Durham also removed his clothes from the waist down and stood behind her. A.D. felt pressure on her vagina from Durham's penis, and she screamed because it hurt. Durham noticed that A.D. had started menstruating, so he stopped. There was no more sexual contact between Durham and A.D. after that. A.D. did not tell anyone what Durham had done to her. Like R.D., she was scared of Durham because he used to beat her, her brothers, and their mother.

In January 2004, the Durhams' marriage was dissolved. In September 2004, A.D. gave birth to her first child and put the birth announcement in the paper. After A.D. listed her stepfather instead of Dur-

ham as her child's grandfather in the announcement, Durham called her and told her that he was upset. A.D. told him that she did not put his name in the announcement because she did not want him to be her child's grandfather and she did not want him to have any contact with her child. A.D. told him that she was going to tell someone that he had physically and sexually abused her. A.D. and her mother went to the Howard County Sheriff's Office, where A.D. gave a written statement.

Durham was subsequently charged in Howard County with two counts of statutory rape, two counts of use of a child in a sexual performance, and two counts of child molestation. He was charged in Chariton County with statutory sodomy in the first degree and incest. Venue in both cases was changed to Randolph County, and the cases were consolidated for trial.

A jury trial was held. The jury found Durham guilty on all eight counts. Durham waived jury sentencing. The circuit court sentenced him to terms of imprisonment of twenty-three years on each of the two counts of statutory rape, twenty-three years on the statutory sodomy count, seven years on each of the two counts of use of a child in a sexual performance, seven years on each of the two counts of child molestation, and four years on the incest count. All sentences are to run concurrently except for the incest sentence, which is to run consecutively to the other sentences. Durham appeals both the Howard County and Chariton County judgments. We consolidated the appeals.

■ In his first point, Durham contends that the amended information was insufficient to charge him with the statutory rape in the first degree counts and that the evidence was insufficient to submit those counts to the jury. Under section 566.032.1, RSMo 2000, "[a] person commits the crime of statutory rape in the first

degree if he has sexual intercourse with another person who is less than fourteen years old." The term, "sexual intercourse," is defined as "any penetration, however slight, of the female sex organ by the male sex organ, whether or not an emission results." § 566.010(4), RSMo 2000. Count I of the amended information alleged that Durham committed the felony of statutory rape in the first degree when he "caused R.D. to have sexual intercourse with A.D., who was less than 14 years old." Count II alleged that Durham committed the felony of statutory rape in the first degree when he "caused A.D. to have sexual intercourse with R.D., who was less than 12 years old." The evidence supporting these charges was the testimony of A.D. and R.D. that, when A.D. was approximately twelve years old and R.D. was approximately ten years old, Durham forced them to have sexual intercourse with each other in his presence.

The crux of Durham's complaint is that, because neither the statutory rape charges nor the State's evidence supporting those charges alleged that he *personally* had sexual intercourse with A.D. or that he acted as an accomplice in aiding or abetting A.D.'s and R.D.'s having sexual intercourse with each other, the charges and evidence were insufficient to convict him of statutory rape. We disagree.

Section 562.041, RSMo 2000, provides when a defendant can be criminally liable for the conduct of another person. § 562.041, Comment to 1973 Proposed Code. Section 562.041.1(2) states that a person is criminally responsible for another's conduct when that person aids or attempts to aid such other person in committing or attempting to commit an offense. Durham argues that, because the State did not allege and prove that he acted in concert with either child by aiding or attempting to aid them in raping the other child,

he cannot be held criminally responsible under section 562.041.1(2) for statutory rape.

Durham's narrow reading of section 562.041.1(2) ignores the Comment to 1973 Proposed Code that follows section 562.041. The Comment specifically states that section 562.041.1(2) "is designed to cover two different bases for liability for conduct of another." The two bases are: (1) "causing an innocent or irresponsible person to commit the conduct"; and (2) "accessorial liability by aiding and abetting." *Id.* The Comment explains that, while the criminal codes of other states specifically set out these two theories of liability for conduct of another in separate sections, the intent of Missouri's Criminal Code is to have section 562.041.1(2) cover both theories of liability.[1] The Comment also states that section 562.041.1(2) "must be read in connection with [section] 562.046(1)[,] which precludes certain matters, including, the other person's lack of criminal capacity, unawareness of defendant's criminal purpose or immunity from prosecution, from being a defense to liability based on the conduct of another." *Id.* When section 562.041.1(2) and the Comment are read in connection with section 562.046(1), it is clear that "causing an innocent person to commit the proscribed conduct renders the one who causes the conduct liable." *Yeager v. State,* 786 S.W.2d 210, 210 (Mo.App.1990). Durham's contention that he could not be charged and convicted "as some sort of a 'causer' " under Missouri's Criminal Code is without merit.

Indeed, section 562.041.1(2) was applied to hold a defendant liable for sodomy based upon his having forced two victims to sodomize each other. *Yeager,* 786 S.W.2d at 210. Similarly, section 562.041.1(2) was applied to hold a defendant liable for rape after the defendant's fourteen-year-old stepson raped the defendant's nine-year-old daughter at the defendant's insistence. *State v. Presley,* 694 S.W.2d 867, 870–72 (Mo.App.1985).

In this case, the record established that the persons who committed the proscribed conduct, A.D. and R.D., were acting under duress, as defined in section 562.071.1, RSMo 2000. A.D. and R.D. were, therefore, innocent actors who were not responsible for their conduct. Pursuant to section 562.041.1(2), Durham was liable for statutory rape in the first degree when he caused A.D. and R.D. to have sexual intercourse with each other.

The Missouri Approved Criminal Charges do not provide specific language to be used when charging a crime committed under these circumstances. In determining whether the amended information was sufficient to charge Durham with statutory rape in the first degree, the issue is whether the information contained all of the essential elements of the offense set out in the statute and clearly apprised Durham of the facts constituting the offense. *State v. Gheen,* 41 S.W.3d 598, 602 (Mo.App.2001). Count I alleged that Durham committed statutory rape by causing R.D. to have sexual intercourse with A.D., who was less than fourteen years old. Count II alleged that Durham committed

---

1. The Comment cites section 7.02 of the Texas Penal Code as an example of a statute that sets out the theories of liability in separate sections. This statute provides, in pertinent part: "(a) A person is criminally responsible for an offense committed by the conduct of another if: (1) acting with the kind of culpability required for the offense, he causes or aids an innocent or nonresponsible person to engage in conduct prohibited by the definition of the offense; [or] (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense[.]" TEX. PENAL CODE ANN § 7.02 (Vernon 2003).

statutory rape by causing A.D. to have sexual intercourse with R.D., who was less than twelve years old. Both counts alleged the elements of statutory rape in the first degree, which are sexual intercourse with another person who is less than fourteen years old. § 566.032.1. Likewise, both counts apprised Durham that he was being charged with causing A.D. and R.D. to commit the proscribed conduct. § 562.041.1(2). The amended information was sufficient to charge Durham with two counts of statutory rape in the first degree. We deny Durham's first point.

■ In his second point, Durham claims that the court erred in accepting the State's proposed jury instructions on the statutory rape counts instead of his proposed instructions. The circuit court has discretion to submit or refuse a proposed jury instruction. *State v. Davis*, 203 S.W.3d 796, 798 (Mo.App.2006). Our review is limited to determining whether the circuit court abused its discretion. *Id.*

Supreme Court Rule 28.02(c) provides that, "[w]henever there is an MAI–CR instruction or verdict form applicable under the law and Notes on Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." If, however, an MAI–CR form must be modified or there is no applicable MAI–CR form, the modified form "shall be simple, brief, impartial, and free from argument." Mo. R.Crim. P. 28.02(d). The modified instruction "shall not submit detailed evidentiary facts" and must, where possible, follow the format of an MAI–CR instruction. *Id.*

The court's instruction on the first count of statutory rape in the first degree read, in pertinent part:

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that between January 5, 1995 to December 25, 1996, in the County of Howard, State of Missouri, the defendant caused [R.D.] to have sexual intercourse with [A.D.], and

Second, that at that time [A.D.] was less than fourteen years old,

then you will find the defendant guilty under Count I of statutory rape in the first degree under this instruction.

The instruction for the second count read, in pertinent part:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that between January 5, 1995 to December 25, 1996, in the County of Howard, State of Missouri, the defendant caused [A.D.] to have sexual intercourse with [R.D.], and

Second, that at that time [R.D.] was less than twelve years old,

then you will find the defendant guilty under Count II of statutory rape in the first degree under this instruction.

These instructions, offered by the State, were a modified version of MAI–CR3d 320.03, the statutory rape in the first degree instruction form. The difference between the MAI–CR3d instruction and the modified instructions was that, while MAI–CR3d 320.03 requires the jury to find that "the defendant knowingly had sexual intercourse with" the victim, the modified instruction for Count I required the jury to find that the Durham "caused [R.D.] to have sexual intercourse with [A.D.]," and the modified instruction for Count II required the jury to find that Durham "caused [A.D.] to have sexual intercourse with [R.D.]."

Durham objected to the submission of these instructions and offered alternative instructions. Durham's proffered instruction for Count I read, in pertinent part:

A person is responsible for his own conduct and he is also responsible for the conduct of another person in committing an offense if he acts with the other person with the common purpose of committing that offense or if, for the purpose of committing that offense, he aids or encourages the other person in committing it.

As to Count I, if you find and believe from the evidence beyond a reasonable doubt:

First, that between January 5, 1995 to December 25, 1996, in the County of Howard, State of Missouri, [R.D.] had sexual intercourse with [A.D.], and

Second, that at the time [A.D.] was less than fourteen years old,

then you are instructed that the offense of statutory rape in the first degree has occurred, and if you further find and believe from the evidence beyond a reasonable doubt:

Third, that with the purpose of promoting or furthering the commission of statutory rape in the first degree, the defendant aided or encouraged [R.D.] in committing the offense, then you will find the defendant guilty under Count I.

His proffered instruction for Count II was similar to his instruction for Count I, except that A.D.'s and R.D.'s names were switched. Durham's proposed instructions tracked MAI–CR3d 304.04, which is the format for situations "where the liability of the defendant is dependent upon his being responsible for the conduct of another person by virtue of being an 'aider and abettor.'" MAI–CR3d 304.04, Notes on Use 2.

The problem with Durham's using MAI–CR3d 304.04 is that Notes on Use 9(a) following the instruction specifically says that "[t]his format of MAI–CR3d 304.04 covers only those situations where the defendant is to be held responsible for the conduct of another person *and* that other person is also guilty of the offense." [2] While it is true that the State sought to hold Durham responsible for the conduct of A.D. and R.D., neither A.D. nor R.D. was guilty of statutory rape in the first degree. Because A.D. and R.D. were not also guilty of statutory rape in the first degree, MAI–CR3d 304.04 was not applicable. The circuit court did not abuse its discretion in refusing to use Durham's proffered instructions for the statutory rape counts.

The instructions that the court used for the two counts of statutory rape in the first degree required the jury to find the elements necessary to convict Durham of statutory rape in the first degree for causing A.D. and R.D. to have sexual intercourse. The instructions were simple, brief, impartial, and free from argument. We, therefore, find no error in the court's instructions for statutory rape in the first degree. We deny Durham's second point.

**2.** The next sentence of Notes on Use 9(a) states that "[t]his format does NOT apply to situations where the defendant is being held responsible for the conduct of another person and that other person is not guilty because the other person lacks the required culpable mental state for any degree of the offense—as can occur where the defendant commits a crime by the use of an 'innocent agent.'" Durham argues that this sentence means that the only situation where MAI–CR3d 304.04 is not to be used is where the other person is not guilty because he or she lacks the required culpable mental state. He contends that, because statutory rape has no culpable mental state, the exception to using MAI–CR3d 304.04 does not apply, and therefore, the court was required to use this format. We disagree. The first sentence in Notes on Use 9(a) clearly says that MAI–CR3d 304.04 covers only those situations where the other person is also guilty of the offense. Hence, where the other person is not guilty for any reason, MAI–CR3d 304.04 should not be used.

 In his third point, Durham contends that the circuit court erred in overruling his *Batson*[3] challenge to the State's peremptory strike of an African–American venireperson without examining the State's information to support the reason it gave for the strike. The circuit court's chief consideration in evaluating a *Batson* challenge is to determine the plausibility of the State's explanations " 'in light of the totality of the facts and circumstances surrounding the case.' " *State v. McFadden*, 191 S.W.3d 648, 651 (Mo. banc 2006) (citation omitted). We will not disturb the circuit court's ruling on a *Batson* challenge unless it is clearly erroneous. *Id.* A ruling is clearly erroneous if we have a "definite and firm conviction that a mistake has been made." *Id.*

 Pursuant to *Batson* and its progeny, the Equal Protection Clause of the United States Constitution prohibits a party from using a peremptory strike to remove a potential juror solely on the basis of the juror's race. *State v. Marlowe*, 89 S.W.3d 464, 468 (Mo. banc 2002). Missouri has a three-step procedure for resolving *Batson* challenges. *Id.* In the first step, the party challenging the strike must object and identify the protected class to which the potential juror belongs. *Id.* In the second step, the other party must present a specific and clear race-neutral reason for the strike. *Id.* Unless a discriminatory intent is inherent in the reason given, the circuit court should deem the reason to be neutral, even if the reason is not persuasive. *Id.* at 468–69. If the other party articulates an acceptable nondiscriminatory reason for the strike, then, in the third step, the burden shifts back to the party challenging the strike to show that the proffered reason was merely pretextual and that the strike was, in fact, motivated by race. *Id.* at 469. To meet

this standard, the party challenging the strike "must present evidence or specific analysis" showing that the proffered reason was pretextual. *State v. Johnson*, 930 S.W.2d 456, 460 (Mo.App.1996). The party "cannot simply rely on conclusory allegations that the real motivation for the strike was racial in nature." *Id.*

In this case, the prosecutor asked the panel during *voir dire:* "Has anyone been a victim of a crime, a witness in a criminal case, or had a close friend or family member charged with a criminal offense, or yourself?" Ruby Rucker, an African–American woman, did not respond to the question. The State later used one of its peremptory strikes to remove Rucker as a potential juror.

Durham properly raised his claim that the State's peremptory strike of Rucker was based upon race. In response, the prosecutor explained that his basis for striking her was because she had misdemeanor bad check charges from the 1980s, which he discovered when he ran a check of her criminal record. Defense counsel then stated, multiple times, that he did not have access to the venire panel's criminal records to determine whether or not there were similarly-situated jurors who were not struck. In denying Durham's challenge, the court said that, according to its notes, Rucker did not disclose her criminal record when she was asked specifically during *voir dire* to do so. The court found that it was "a perfectly legitimate reason to strike her."

The State was permitted to use Rucker's criminal record—information that was outside the record—as the basis for a peremptory strike. *State v. Deck*, 994 S.W.2d 527, 538 (Mo. banc 1999). Durham argues on appeal, however, that the court erred in overruling his objection to the strike with-

**3.** *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

out first examining the venire panel's criminal records. Durham contends that, without examining this information, the court had no basis upon which to determine whether there were similarly-situated jurors that the prosecutor did not strike.

The burden to produce and provide information showing that there were similarly-situated white jurors that the prosecutor did not strike was Durham's, however, and not the State's or the circuit court's. Durham presented no evidence of the racial composition of the venire panel from which the peremptory strikes were made, and he never asked whether or not the prosecutor ran criminal record checks of anyone else on the venire panel. Instead, he merely complained that he did not have access to the venire panel's criminal records.[4] Because the prosecutor's proffered reason for striking Rucker—her failure to disclose her criminal record—was facially race-neutral, it was incumbent upon Durham to produce and offer specific evidence or analysis showing that the State's reason was pretextual. He did not do so. The circuit court did not err in overruling Durham's *Batson* challenge. We deny Durham's third point.

We affirm the circuit court's judgments convicting Durham of two counts of statutory rape in the first degree, two counts of use of a child in a sexual performance, two counts of child molestation in the first degree, one count of statutory sodomy in the first degree, and one count of incest.

All concur.