

# MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD85844 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | |
| XAVIER BLAKE GEE, | ) | February 20, 2024 |
| | ) | |
| Appellant. | ) | |
| | ) | |

**Appeal from the Circuit Court of Boone County, Missouri**
**Honorable R. Jeffrey Harris, Judge**

**Before Division Two: Anthony Rex Gabbert, Presiding Judge,**
**Karen King Mitchell, Judge, and Janet Sutton, Judge**

Xavier Gee (Gee) appeals the Boone County Circuit Court's (trial court) judgment convicting him, following a jury trial, of rape in the first degree under section 566.030,[1] sodomy in the first degree under section 566.060, kidnapping in the first degree under section 565.110, two counts of robbery in the first degree under section 570.023, and two counts of armed criminal action under section 571.015. For reasons explained herein, we affirm the trial court.

Gee brings four points on appeal. First, Gee argues the trial court erred in overruling Gee's motions for judgment of acquittal on his kidnapping charge because the State failed to

---

[1] Unless otherwise indicated, all statutory references are to the Revised Statutes of Missouri 2016, as amended, and all rule references are to the Missouri Supreme Court Rules 2022.

1

establish beyond a reasonable doubt that Gee confined Victim Two for the purpose of facilitating the commission of sodomy. Second, Gee argues the trial court plainly erred in declining to answer the jury's question during the penalty phase about whether Gee's sentences would run consecutively or concurrently. Third, Gee argues the trial court plainly erred in sustaining the State's objection to his proffered non-MAI[2] jury instruction because the jury needed to know the trial court had no discretion to run the majority of sentences concurrently, but that all sentences except those for the two robberies were statutorily required to run consecutively. Fourth, Gee argues the trial court plainly erred in overruling Gee's objection to State's Exhibit 44, clip 7 that contained Gee's statements that he used drugs because those statements were irrelevant and constituted prejudicial bad acts. We affirm the trial court's judgment.

## Factual and Procedural Background[3]

### *Victim One*

On December 21, 2020, Victim One stayed at a motel in Columbia, Missouri, and provided sexual services in exchange for money. Gee contacted Victim One and discussed prices for sexual services and where to meet. Gee arrived at the motel and told Victim One he only had $100.00, which was less than the previously agreed-upon price. Victim One agreed to

---

[2] All references to the "MAI" are to the Missouri Approved Jury Instructions–Criminal 4th edition.

[3] "On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict." *State v. Berwaldt*, 652 S.W.3d 793, 795 n.3 (Mo. App. W.D. 2022).

Further, Gee challenges the sufficiency of the evidence as to his kidnapping conviction in his first point on appeal. When reviewing the sufficiency of the evidence to support a criminal conviction, "[t]he evidence and all reasonable inferences therefrom are viewed in the light most favorable to the verdict, disregarding any evidence and inferences contrary to the verdict." *State v. Minor*, 648 S.W.3d 721, 736 (Mo. banc 2022) (quoting *State v. Stewart*, 560 S.W.3d 531, 533 (Mo. banc 2018)).

perform oral sex on Gee in exchange for $100.00.

Victim One performed oral sex, and Gee gave her $100.00. But, when Victim One went to the bathroom to clean up, Gee "pulled out a gun on [her]," hit Victim One with the gun, knocked her to the ground, and demanded money. Victim One only had the $100.00 Gee had already given her, but Gee demanded more. Gee made Victim One crawl on the ground to get her purse and show him her wallet. Gee said that his gang leader would not be happy with him and told Victim One he had to take something from her. Victim One offered her phone and laptops, but Gee said he did not want those and would take something else.

Gee then told Victim One "I'm going to have to f*** you," and had Victim One "strip back down." Gee then raped Victim One while holding a gun against the back of her head. Gee took a picture of Victim One's identification and threatened to kill her and her family if Victim One told anyone. Throughout the assault, Victim One was crying and screaming. Victim One feared Gee was going to kill her and she begged for her life.

When he was done, Gee ordered Victim One to crawl to the corner of the room and to put her nose in the corner for fifty seconds as Gee left. Victim One waited about sixty seconds before calling the police. When the police arrived, Victim One reported what happened, but at first did not tell the police that she was a sex worker because she feared they "wouldn't take it serious," but told officers the truth during a later interview.

After reporting, Victim One then received medical treatment and underwent a sexual assault examination. Police recovered the surveillance video from the motel that showed Gee going to Victim One's room.

***Victim Two***

Victim Two also provided sexual services in exchange for money. Gee was a "regular" of Victim Two's. Gee contacted Victim Two on January 21, 2021, and arranged for Victim Two to pick him up near his apartment. Victim Two picked up Gee in her car, and Gee was "more talkative than usual" and asked Victim Two how much money she had saved up for a new car. Gee then directed Victim Two to drive to a park.

As Victim Two drove, she heard a gun cock and saw the barrel of a gun out of the corner of her eye. Gee then said, "This is a robbery. You're going to do exactly what I say and you're going to drive me wherever I want to go." Gee then "pistol whipped" Victim Two across the face with his gun, knocking off her glasses. Gee ordered Victim Two to strip down to her underwear and Victim Two complied. Victim Two asked Gee multiple times whether he was going to rape her. Victim Two tried to contact emergency services with her smart watch, but Gee noticed her attempt, took her watch, and hit Victim Two with his gun again.

Gee ordered Victim Two to drive as Gee sat in the back seat pointing his gun at her. Gee ordered Victim Two to drive on the interstate. As Victim Two drove, Gee was on his phone planning "to meet up at a spot" to try and "sell" Victim Two. At some point, Gee told Victim Two to get off the interstate.

Victim Two got off the interstate outside the Columbia city limits. Victim Two believed she was going to be "gang raped" or sold, and eventually stopped the car at a fork in the road. Victim Two told Gee "he could just shoot [her] right then and there." Gee said he was going to get $5,000.00 out of Victim Two, and asked Victim Two what she had to "get close to that number." Victim Two gave Gee her wedding ring and another ring and told Gee about a gun in the trunk of her car, which seemed to excite Gee. Gee then ordered Victim Two to drive to a cul-

4

de-sac.

When Victim Two drove to the cul-de-sac, Gee ordered Victim Two out of the car and on her knees to beg for her life. Gee made Victim Two suck the end of his pistol. Gee then ordered Victim Two to get into the trunk of her car. Victim Two did not want to get into the trunk, but Gee "pinky-promised" Victim Two that he would not take Victim Two to "the spot." Victim Two, still in her underwear, then got into the trunk of her car and covered up with blankets to keep warm. At some point while Gee and Victim Two were in the cul-de-sac, Gee took Victim Two's gun from her trunk.

With Victim Two in the trunk, Gee drove Victim Two's car so erratically that Victim Two believed Gee was going to wreck her car. Eventually, Gee stopped by a metal building, announced he was "at the spot," and let Victim Two out of the trunk.

Gee and Victim Two then went into the backseat of the car, and Gee told Victim Two that she had to perform certain sexual acts and insinuated that Victim Two had to do a "blow job." When Victim Two said it was nonconsensual, Victim Two "had to pretend that [she] wanted to give him the best blow job of his life so that he wouldn't do worse things to [her.]" Forcing Victim Two back out of the car, Gee held his gun to Victim Two's head and had Victim Two record herself with Gee's phone as she performed oral sex. Gee "pistol whipped" Victim Two during the assault and ejaculated on her face. Believing Gee "seemed relieved at this point," and "was satisfied he got what he wanted," Victim Two then cleaned her face with a paper towel.

Gee was hesitant to let Victim Two go because she knew Gee's name, his number, and where he lived, but Victim Two assured Gee that she would not report the crime. Victim Two said she would not call the police because, "I'm an escort. They'll never believe me. They'll

5

laugh at me." Victim Two then dropped Gee off near his apartment and thanked Gee for "having mercy" on her.

Victim Two then reported the assault to the police and gave them the paper towel she used to clean her face. The police also collected a DNA swab from Victim Two's mouth.

The police then executed a search warrant on Gee's apartment on January 22, 2021. During the search, the police recovered Victim Two's gun from a toilet basin as well as Victim Two's rings from an inside pocket of a brown winter vest that Gee was wearing the night of the offense. Police took Gee's cell phone from him at the time of his arrest and recovered from it the video that Victim Two took of the assault using his phone.

A Columbia detective interviewed Gee that same day. During the interview, Gee admitted that he threatened the Victims with a gun and that he robbed them. Gee also admitted that he had the Victims at gunpoint and that he wanted the Victims to fear him so they would give him something of value. Gee further admitted that he "put" Victim Two into the trunk of her car because he threatened her with a gun and that Victim Two "was doing everything to make [him] happy." Gee stated, "I'm not going to lie to you and tell you that I didn't do these things, because I did."

Police obtained a buccal swab from Gee. Gee's DNA matched the DNA profile from the semen that was found on the vaginal swab collected from Victim One during the sexual assault exam. Gee's DNA also matched the DNA profile from the semen recovered from the paper towel used by Victim Two.

While incarcerated in the Boone County Jail, Gee made several phone calls during which he admitted to robbing the Victims at gunpoint and that he knew the Victims were "whores" and that their job was to provide sexual services in exchange for money. On a call, Gee said, "when

they didn't have any money, I was just like, let's just f*** and let me leave. After I had them at gunpoint . . . there was no going back. All the damage was already done." Gee admitted that he owed "hella money," and said, "I was just like, alright I'm gonna go out and rob some people . . . . So I started robbing hoes" because they were "easy targets." Gee also talked about his charges and the probable cause statement, admitting, "[t]hey basically have what happened."

***Charges and Trial***

As to Victim One, the State charged Gee with rape in the first degree under section 566.030 (Count I), robbery in the first degree under section 570.023 (Count II), and armed criminal action under section 571.015 (Count III). As to Victim Two, the State charged Gee with sodomy in the first degree under section 566.060 (Count IV), robbery in the first degree under section 570.023 (Count V), armed criminal action under section 571.015 (Count VI), and kidnapping in the first degree under section 565.110 (Count VII).

Gee was tried before a jury and was found guilty on all counts. As to Victim One, the jury recommended a sentence of eighteen years on Count 1 for rape in the first degree, ten years on Count II for robbery in the first degree, and three years on Count III for armed criminal action. As to Victim Two, the jury recommended eighteen years on Count IV for sodomy in the first degree, ten years on Count V for robbery in the first degree, three years on Count VI for armed criminal action, and five years on Count VII for kidnapping in the first degree. The trial court sentenced Gee accordingly and ordered all sentences to run consecutively to each other, for a total of sixty-seven years' imprisonment.

Gee appeals. Additional facts necessary to the disposition of the case are included below as we address Gee's points on appeal.

## Legal Analysis

### I. Sufficiency of the Evidence to Support the First-degree Kidnapping Conviction

In his first point on appeal, Gee argues that the trial court erred in overruling his motions for judgment of acquittal as to the charge of first-degree kidnapping in violation of Gee's Due Process rights under the Fourteenth Amendment and Article I, Section 10 of the Missouri Constitution. Specifically, Gee argues the State's evidence "was insufficient to sustain the jury's finding of guilt of that offense, since the [S]tate's evidence failed to establish beyond a reasonable doubt that [Gee] confined [Victim Two] for the purpose of facilitating the commission of sodomy." We disagree.

Our review "is limited to determining whether there was sufficient evidence from which a reasonable juror might have found the defendant guilty beyond a reasonable doubt." *State v. Day*, 651 S.W.3d 844, 848 (Mo. App. W.D. 2022) (citation omitted). We are not assessing "whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt," but rather "whether, in light of the evidence most favorable to the State, any rational fact-finder could have found the essential elements of the crime beyond a reasonable doubt.'' *State v. Berwaldt*, 652 S.W.3d 793, 796 (Mo. App. W.D. 2022) (quoting *State v. Zetina-Torres*, 482 S.W.3d 801, 806 (Mo. banc 2016)); *Day*, 651 S.W.3d at 848 (citation omitted).

Further, "[o]ur review is based on how the crime was charged." *State v. Rhymer*, 563 S.W.3d 714, 719 (Mo. App. W.D. 2018) (citing *Zetina-Torres*, 482 S.W.3d at 809). "In finding whether there is sufficient evidence to support a conviction 'and to withstand a motion for judgment of acquittal, this Court does not weigh the evidence but rather accepts as true all evidence tending to prove guilt together.'" *State v. Hartwein*, 648 S.W.3d 834, 844 (Mo. App. E.D. 2022) (citation omitted). "We accept as true all evidence *and reasonable inferences that*

8

*support the conviction*, ignore all evidence and inferences to the contrary, and do not reweigh the evidence." *Rhymer*, 563 S.W.3d at 719 (emphasis added). "Circumstantial rather than direct evidence of a fact is sufficient to support a verdict." *Hartwein*, 648 S.W.3d at 844 (citation omitted).

Gee was charged with kidnapping in the first degree under section 565.110, having specifically:

> [U]nlawfully confined [Victim Two] for a substantial period, without [Victim Two]'s consent because [Gee] used a gun to force [Victim Two] to go into the trunk of a motor vehicle and used a gun to control [Victim Two]'s movements, for the purpose of facilitating the commission of the felony of sodomy.

Gee was also charged and convicted of sodomy in the first degree under section 566.060 as to Victim Two. Gee's sodomy charge read as follows:

> [Gee] knowingly had deviate sexual intercourse with [Victim Two], by the defendant putting his penis in the mouth of [Victim Two] without the consent of [Victim Two], by the use of forcible compulsion, and in the course of such offense displayed a deadly weapon, a handgun, in a threatening manner.

This first-degree sodomy charge served as the underlying felony supporting Gee's conviction of kidnapping in the first-degree.

Section 565.110, the statute for kidnapping in the first-degree, states:

> 1. A person commits the offense of kidnapping in the first degree if he or she unlawfully removes another person without his or her consent from the place where he or she is found or unlawfully confines another person without his or her consent for a substantial period, for the purpose of:
> . . . (4) Facilitating the commission of any felony or flight thereafter[.]

Section 566.060, the statute for sodomy in the first-degree, states:

> 1. A person commits the offense of sodomy in the first degree if he or she has deviate sexual intercourse with another person who is incapacitated, incapable of consent, or lacks the capacity to consent, or by the use of forcible compulsion. Forcible compulsion includes the use of a substance administered without a victim's knowledge or consent which renders the victim physically or mentally impaired so as to be incapable of making an informed consent to sexual intercourse.

9

The evidence shows that before forcing Victim Two into the trunk, Gee forced Victim Two to strip down to her underwear and ordered Victim Two to suck the end of his pistol. Gee then confined Victim Two, who remained stripped down, in the trunk of her car while Gee drove from the cul-de-sac to "the spot" outside a metal building. Gee used a gun to force Victim Two to get into the trunk and used his gun to control Victim Two's movements in and out of the trunk. After Victim Two got out of the trunk, Gee then controlled Victim Two as she got into the backseat of the car.

Gee told Victim Two that she had to perform certain sexual acts and insinuated that Victim Two had to do a "blow job." When Victim Two said it was nonconsensual, Victim Two "had to pretend that [she] wanted to give him the best blow job of his life so that he wouldn't do worse things to [her.]" Forcing Victim Two back out of the car, Gee held his gun to Victim Two's head and had Victim Two record herself with Gee's phone as she performed oral sex.

We find sufficient evidence from which a reasonable juror could infer that Gee confined Victim Two in her trunk for a substantial period of time to facilitate the commission of sodomy. Accepting as true all evidence and reasonable inferences in support of Gee's conviction, a reasonable juror could have found the essential elements of kidnapping beyond a reasonable doubt. *See Rhymer*, 563 S.W.3d at 719 ("We accept as true all evidence and reasonable inferences that support the conviction, ignore all evidence and inferences to the contrary, and do not reweigh the evidence."). Thus, the trial court did not err in denying Gee's motions for judgment of acquittal and in finding there was sufficient evidence for the jury to convict Gee of kidnapping in the first degree.

Gee's first point is denied.

10

**II.  Declining to Answer the Jury's Question About Consecutive or Concurrent Sentences**

In his second point on appeal, Gee argues the trial court plainly erred in declining to answer the jury's question in the penalty phase about whether the sentences would run consecutively or concurrently.  Gee alleges that the trial court's action denied him Due Process and a fundamentally fair trial before a properly instructed jury under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution.  Gee argues that "the jury's note to the judge indicated that it was concerned about the possibility that it needed to impose lengthy sentences in order for its intent to be carried out, or if the sentences would automatically run concurrently."  Thus, the trial court's "refusal to alleviate that concern created the likelihood that the sentences [Gee] received were based on the jury's fear and not based on its consideration of the facts and the instructions."  We disagree.

During the trial's penalty phase, the jury asked a question while deliberating the potential sentences on all seven charges.  The jury asked, "Concurrent or consecutive?"  The trial court then had the following exchange:

The Court:  We're on the record.  I have a note from the jury.  The time of the note is 3:36 p.m.  The note is signed by the foreperson, and it says as follows:  One, concurrent or consecutive sentences, question mark.

[The State]:  I think you have to say like you did before when they—well, for what they asked for, do you got an answer?

The Court:  They asked a question about Count VII.  I have an answer proposed here, but I want to hear from the parties before I tell you what I'm planning to say.

[Defense Counsel]:  *I'd say the Court can't provide you that information.*

The Court:  What I was inclined to say was, you will be guided by the instructions of the Court.  That's my typical answer for questions that ask about, you know, wanting to see evidence that's—anyway, questions about instructions, et cetera.  But if you have a different request and you

guys agree to it, that's fine.

[Defense Counsel]: I guess, I mean, the tone of my proposed response might be somewhat argumentative.

The Court: What did you propose again?

[Defense Counsel]: *I proposed the Court simply saying that the Court cannot provide you with that information.*

The Court: Do you have any objection to that?

[The State]: No. I think the benefit of that, Judge—I like your proposed response because that's the typical. That's like what the response would be that the MAI would tell you to do. [Defense Counsel]'s idea is right to the point. I wouldn't want them looking through the instructions trying to find the answer where, I mean, [Defense Counsel]'s cuts right to the point.

The Court: Okay. *So the Court cannot provide you with the answer to this question. Is that what you said?*

[Defense Counsel]: *That would be perfect.*

[The State]: I'm fine with that, Judge.

The Court: All right. The Court cannot provide you with the answer to this question.

(Emphasis added). The trial court then answered the jury's question saying, "The Court cannot provide you with an answer to this question."

We decline to review Gee's second point on appeal because Gee invited any alleged error on this issue at trial. "[U]nder the doctrine of self-invited error, [a] party cannot complain on appeal about an alleged error in which that party joined or acquiesced . . . ." *State v. Whirley*, 666 S.W.3d 223, 231 (Mo. App. W.D. 2023) (citation omitted). Further, an appellant waives plain error review in cases "in which counsel has affirmatively acted in a manner precluding a finding that the failure to object was a product of inadvertence or negligence." *Id.* (quoting *State v. Mead*, 105 S.W.3d 552, 556 (Mo. App. W.D. 2003)). Notably, "[w]here a defendant affirmatively accepts and agrees to what the trial court proposes, any claim of error related to the trial court's action is affirmatively waived, negating plain error review." *State v. Winters*, 623

12

S.W.3d 746, 753 (Mo. App. W.D. 2021). "[A] defendant cannot affirmatively accept a judge's proposed action in the hope of a strategic advantage; then, turn 180 degrees and urge an appellate court to find the trial court plainly erred in doing that to which the defendant originally agreed." *Id.* at 754 (citation omitted).

Gee did not raise this issue in his later motion for judgment of acquittal notwithstanding the verdict or for a new trial. Gee asks this Court to review whether the trial court erroneously declined to answer the jury's question in the penalty phase of trial for plain error. Yet, during trial, Gee requested the trial court reply to the jury's question as "the Court cannot provide you with that information." The trial court followed Gee's suggested response. Gee made no objection nor suggested alternate wording. Thus, Gee's counsel affirmatively acted in a manner precluding our review of whether the trial court plainly erred in declining to answer the jury's question in the penalty phase about whether the sentences would run consecutively or concurrently. *See Whirley*, 666 S.W.3d at 231 (quoting *Mead*, 105 S.W.3d at 556). We decline plain error review.

Gee's second point is denied.

### III. Sustaining the State's Objection to Gee's Proposed Non-MAI Jury Instruction

In his third point on appeal, Gee argues that the trial court erred in sustaining the State's objection to his proffered jury "Instruction A" because "this ruling deprived [Gee] of [D]ue [P]rocess and a fundamentally fair trial before a properly instructed jury under the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 18(a) of the Missouri Constitution . . . ." Gee argues that the trial court should have given his non-MAI Instruction A because "the jury needed to know that the [trial] court had no discretion to run the majority of the sentences concurrently, but that all sentences other than the two robberies (and

13

only as to each other) must be run consecutively." We disagree.

Gee's proffered non-MAI Instruction A read as follows:

The jury will make a recommendation as to the term of years to be served on all counts for which the jury has returned a verdict of guilty. In considering the term of years the jury is advised to also consider that the law requires the following in this case:

1) [S]entences for 1st degree sodomy and 1st degree rape must be served consecutively.

2) [S]entences for 1st degree robbery involving each of the two victims may be concurrent to each other but be consecutive to the associated sex offense.

3) [A]rmed criminal action must be consecutive to the associated robbery and consecutive to the associated sex offense.

4) [K]idnapping must be consecutive to the associated sex offense.

Gee argued the merits of Instruction A during both the jury instruction conference at the guilt phase of trial and the jury instruction conference at the penalty phase of trial. Gee, however, officially proffered Instruction A during the jury instruction conference at the penalty phase of trial. The State objected. After lengthy argument, the trial court rejected the proffered instruction and sustained the State's objection. Gee properly marked Instruction A to preserve his allegation of error for appeal, and raised the issue in a motion for new trial.

As to Victim One, the State charged Gee with rape in the first degree under section 566.030 (Count I), robbery in the first degree under section 570.023 (Count II), and armed criminal action under section 571.015 (Count III). As to Victim Two, the State charged Gee with sodomy in the first degree under section 566.060 (Count IV), robbery in the first degree under section 570.023 (Count V), armed criminal action under section 571.015 (Count VI), and kidnapping in the first degree under section 565.110 (Count VII). Gee was convicted on all seven counts.

Section 558.026.1, which generally governs concurrent and consecutive terms of

imprisonment, states:

> 1. Multiple sentences of imprisonment shall run concurrently unless the court specifies that they shall run consecutively; except in the case of multiple sentences of imprisonment imposed for any offense committed during or at the same time as, or multiple offenses of, the following felonies:
>
> (1) Rape in the first degree, forcible rape, or rape;
>
> (2) Statutory rape in the first degree;
>
> (3) Sodomy in the first degree, forcible sodomy, or sodomy;
>
> (4) Statutory sodomy in the first degree;
>
> (5) An attempt to commit any of the felonies listed in this subsection. In such case, the sentence of imprisonment imposed for any felony listed in this subsection or an attempt to commit any of the aforesaid shall run consecutively to the other sentences. The sentences imposed for any other offense may run concurrently.

Therefore, Section 558.026.1 dictates that first-degree rape and first-degree sodomy must run consecutively to each other and any offense committed at or during the first-degree rape or first-degree sodomy must be consecutive to that first-degree rape or first-degree sodomy sentence. § 558.026.1.

Gee's sentences for first-degree rape and first-degree sodomy were statutorily required to run consecutively. Likewise, under section 558.026.1, as to Victim One, Gee's sentence of first-degree rape would run consecutively to both the first-degree robbery sentence and the armed criminal action sentence. As to Victim Two, Gee's sentence of first-degree sodomy would run consecutively to Gee's sentences for first-degree robbery, armed criminal action, and first-degree kidnapping.

Further, section 571.015, the statute governing the offense of armed criminal action, requires, "The punishment imposed pursuant to this subsection *shall be in addition to and consecutive to* any punishment provided by law for the crime committed by, with, or through the use, assistance, or aid of a dangerous instrument or deadly weapon." § 571.015.1. Both of Gee's

15

convictions for first-degree robbery under section 570.023 included an accompanying armed criminal action count. Thus, each of Gee's convictions for armed criminal action were required to run consecutively to the respective convictions for first-degree robbery.

"The trial court has discretion to submit or refuse a proffered jury instruction." *State v. Lucas*, 559 S.W.3d 434, 444 (Mo. App. W.D. 2018) (quoting *State v. Bush*, 372 S.W.3d 65, 69 (Mo. App. W.D. 2012)). *See also State v. Durham*, 299 S.W.3d 316, 321 (Mo. App. W.D. 2009). "Our review is limited to determining whether the trial court abused its discretion." *Lucas*, 559 S.W.3d at 444 (quoting *Bush*, 372 S.W.3d at 69); *Durham*, 299 S.W.3d at 321. "A trial court abuses its discretion if the ruling is clearly against the logic of the circumstances and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *State v. Davis*, 203 S.W.3d 796, 799 (Mo. App. W.D. 2006).

Rule 28.02(c) provides that "[w]henever there is an MAI–CR instruction or verdict form applicable under the law and Notes on Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form." *Durham*, 299 S.W.3d at 321 (quoting Rule 28.02(c)). If no MAI–CR form applies, however, "the modified form 'shall be simple, brief, impartial, and free from argument.'" *Durham*, 299 S.W.3d at 321 (quoting Rule 28.02(d)); *State v. Swartz*, 517 S.W.3d 40, 58 (Mo. App. W.D. 2017) (citation omitted). "And in giving such a non-MAI instruction, 'the [trial] court must adopt an instruction that follows the substantive law and can be readily understood by the jury.'" *Swartz*, 517 S.W.3d at 58 (citation omitted).

Here, the trial court did not abuse its discretion because Instruction A failed to follow the substantive law. As our Court held in *State v. Atkeson*, section 557.036 provides that "[t]he court shall instruct the jury as to the range of punishment authorized by statute for each submitted

16

offense." 255 S.W.3d 8, 11 (Mo. App. S.D. 2008). *State v. Atkeson* holds:

> When submitting instructions to a jury in a criminal trial, Rule 28.02(c) requires the trial court to use a Missouri Approved Criminal Instruction (MAI–CR) whenever applicable under the law 'to the exclusion of any other instruction or verdict form." A trial court's failure to follow Rule 28.02 constitutes error. Rule 28.02(f). Thus, if an applicable MAI–CR exists, the trial judge is not allowed to vary from it. Rule 28.02.

*Id. See also Deckard v. State*, 110 S.W.3d 891, 895–96 (Mo. App. S.D. 2003) ("[W]hen an MAI–CR instruction is applicable under the law and Notes on Use, that instruction must be given as written, to the exclusion of any other proffered instruction."); *State v. Plunkett*, 473 S.W.3d 166, 172 (Mo. App. W.D. 2015) ("Whenever there is an MAI–CR instruction applicable under the law . . . , the MAI–CR instruction is to be given to the exclusion of any other instruction.").

> Further:

> MAI–CR 3d 300 *et seq.* applies to bifurcated criminal trials and does not contain a section on instructing the jury in regard to consecutive or concurrent sentencing. Therefore, *an error would have occurred if the trial judge had answered the jury's question*. The trial court instructed the jury as to the range of punishment; the only requirement of section 557.036, RSMo Cum.Supp.2003.

*Atkeson*, 255 S.W.3d at 11 (emphasis added).

This has not changed with the updated MAI–CR 4th 400 series of instructions. The applicable instructions give the jury only the range of punishment authorized for each offense. It would have been an error for the trial court to give Instruction A.

Gee's third point is denied.

**IV.      Overruling an Objection to Statements of Drug Use in a Police Interview**

In his fourth and final point on appeal, Gee argues, "The trial court plainly erred in overruling defense counsel's objection to clip 7 of State's Exhibit 44" because this evidence "violated [Gee]'s rights to [D]ue [P]rocess, a fair trial, and to be tried only for the offense charged, guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution

and Article I, Sections 10, 17 and 18(a) of the Missouri Constitution . . . ." Gee alleges that this evidence violated his rights because Exhibit 44 contained Gee's statements about his drug activity including, 'I do a lot of drugs' and 'I do a lot of cocaine,' that were "irrelevant and prejudicial bad acts." We disagree.

In his pretrial motion in limine, Gee asked the trial court to exclude any mention or reference to any evidence that Gee "engaged in any activity involving illegal drugs" and argued this in a pretrial hearing. In response to Gee's motion, the State argued, "[A]ny evidence that the defendant has engaged in any activity involving illegal drugs . . . [is] incredibly relevant in this case. It goes straight to motive." The State continued, "Gee says throughout his jail calls and his interview with the lead detective in this case . . . that he committed these robberies because he needed to get money to pay his drug supplier." Further, "There's several [calls] where he talks about how he needed to get money to pay his drug supplier and that the best way he thought of doing that would be by robbing prostitutes. So it goes straight to motive."

Gee responded only that the evidence should be excluded because he was "not charged with any drug offense" and stood on the written motion. The trial court then denied Gee's motion in limine as to the exclusion of any activity involving illegal drugs, but stated the trial court "may hear evidence at trial and change [its] mind."

At trial, the State moved to admit Exhibit 44, a collection of audio clips from Gee's police interview. Among these clips, clip 7 contained Gee's statements in which he referenced his own drug use. When the State moved to admit Exhibit 44, however, Gee said, "No objection." The State then asked to publish the exhibit to the jury with no objection from Gee. Gee only objected to State's Exhibit 44, clip 7 *after* Exhibit 44 had already been admitted and partially published to the jury. As clip 7 started to play, the record contains the following

18

interaction:

> [The State]: Clip Number 7 now.
>
> (Playing Video.)
>
> The Court: One moment, please.
>
> [Defense Counsel]: Your Honor, I renew my earlier motion on this issue at this time.
>
> [The State]: Goes to motive, Judge. Same—
>
> The Reporter: I'm sorry. I didn't hear what you said, sir.
>
> [The State]: He says he's under the influence of cocaine when he committed the crime, but we also have evidence of him selling cocaine and that goes to motive.
>
> The Court: Do you wish to be heard further on your motion?
>
> [Defense Counsel]: I will stand on my written motion.
>
> The Court: All right. I will overrule the motion for the reasons previously articulated.

Later, Gee failed to raise this issue in his motion for judgment of acquittal notwithstanding the verdict or for a new trial.

"To properly preserve a challenge to the admission of evidence for appellate review, the objecting party must make a specific objection at the time of the attempted admission of the evidence." *State v. Spears*, 452 S.W.3d 185, 196 (Mo. App. E.D. 2014). As we held in *State v. Whirley*:

> This [C]ourt has restricted waiver of plain error to cases in which counsel has affirmatively acted in a manner precluding a finding that the failure to object was a product of inadvertence or negligence. *When a party affirmatively states that it has no objection to evidence an opposing party is attempting to introduce, for instance, plain error review is unavailable.*

666 S.W.3d at 231 (emphasis added) (citation omitted). "[T]he general rule in Missouri is that a statement of 'no objection' when the evidence is introduced *affirmatively waives appellate review of the admission*." *State v. Williams*, 411 S.W.3d 275, 277 (Mo. App. S.D. 2013) (emphasis added) (citation omitted). *See also State v. Barnes*, 583 S.W.3d 458, 463 (Mo. App.

19

S.D. 2019) ("An announcement of 'no objection' constitutes an affirmative waiver of appellate review, and "[u]nder such circumstances, 'even plain error review is not warranted.'").

By failing to timely object, by explicitly stating he had "No objection" when the State sought to admit Exhibit 44, and by failing to include the issue in a motion for new trial, Gee waived appellate review of this issue.

Even were we to review and consider Gee's final point relied on, we would affirm the trial court's ruling that any statements made by Gee during his police interview about his illegal drug use would be admissible as to Gee's motive for committing the crimes.

"A trial court has broad discretion to admit or exclude evidence at trial." *State v. Bowen*, 619 S.W.3d 620, 622 (Mo. App. S.D. 2021) (quoting *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006)). "Generally, evidence of prior bad acts is inadmissible to show the propensity of the defendant to commit the crime for which he is charged." *Id.* at 626. "However, evidence of such misconduct is admissible 'to establish motive, intent, the absence of mistake or accident, a common scheme or plan, or the identity of the alleged perpetrator.'" *Id.* (quoting *State v. Davis*, 211 S.W.3d 86, 88 (Mo. banc 2006)).

"Further, '[w]ide latitude is given in the development of motive,' and uncharged drug use is relevant to show motive for a subsequent robbery." *Id.* (citations omitted). *See also State v. Young*, 582 S.W.3d 84, 92 (Mo. App. E.D. 2019) (holding that evidence of defendant's drug use was admissible where defendant admitted to police that he was a drug user and that the defendant stole to fund his drug use); *State v. Oplinger*, 193 S.W.3d 766, 771 (Mo. App. S.D. 2006) (holding the trial court did not abuse its discretion in permitting the State to cross-examine defendant about his drug use because defendant's drug use was admissible to show a possible motive to commit robbery). "Missouri courts have upheld the admission of drug use to establish

20

a motive for the charged crime where the record explicitly included the admission of motive." *Young*, 582 S.W.3d at 92. "Evidence of prior drug use is admissible to explain a defendant's motive to steal to feed his drug habit." *State v. Bowles*, 23 S.W.3d 775, 781 (Mo. App. W.D. 2000) (citing *State v. Sims*, 952 S.W.2d 286, 292 (Mo. App. W.D. 1997)).

In his police interview, Gee admitted that he "owed some people some money" and was "desperate to make ends meet." Gee also said he could not recall what "exactly" happened because he was using drugs and that he did "a lot of cocaine." In his jail phone calls, Gee admitted that that he owed "hella money," and said, "I was just like, alright I'm gonna go out and rob some people, you know what I'm saying? So I started robbing hoes." Gee also admitted to robbing the Victims at gunpoint and that he knew the Victims were "whores" and that their job was to provide sexual services in exchange for money. Gee admitted, "when they didn't have any money, I was just like, let's just f*** and let me leave. After I had them at gunpoint . . . there was no going back. All the damage was already done."

Statements of Gee's uncharged drug activity in Exhibit 44, clip 7 were admissible to show his motive to rob the Victims. Thus, the trial court did not err in allowing into evidence Gee's own statements of his illegal drug use.

Gee's fourth point is denied.

### Conclusion

The trial court's judgment is affirmed.

_____
Janet Sutton, Judge

Anthony Rex Gabbert, P.J., and Karen King Mitchell, J. concur.

21